ROBERT W. BROOKE *vs.* WILLIAM F. BERRY.—*December,* 1843.

In an action of *replevin* brought for certain slaves by W against R and E, it was proved, that for several years before the 1st January 1837, the defendant E was in possession of the slaves taken under the writ. The plaintiff for the purpose of showing title in himself, proposed to read to the jury articles of agreement dated on that day, between himself and E, by which the latter agreed to furnish him with certain negroes, (bearing the same names with those replevied,) for the period of ten years. The defendant objected to the admissibility of the articles of agreement, upon the ground that there was no evidence that he claimed title under E, or any connexion between them. HELD:

20      v. 1

Brooke *vs.* Berry.—1843.

1. That if the articles of agreement furnished evidence that E's title had passed to W, (the plaintiff having first showed that E had title,) they es. tablished his title against the defendant, whether the defendant claimed under E or not, or whether E had any connexion with R or not.

2. That the question to be decided was the admissibility of the evidence offered, and not the correctness or incorrectness of the particular ground on which the court below decided.

3. That there must be some evidence to show the identity of the negroes assigned, with those replevied.

4. That having shown title in E, the articles constituted a link of the plaintiff's title, and would or would not be evidence in the cause, upon the establishment or failure to establish the identity of the negroes.

5. That the defendant having objected to the evidence on a ground that assumed the identity of the negroes, and before the plaintiff had an opportunity of disclosing his whole proof, the court below were justified in assuming, what he, in such a state of the case, conceded.

6. The original possession of E, the negroes being replevied from him, and bearing the same names in the articles and writ, and nothing to show that E had other negroes of same name, is evidence of identity.

The action of replevin is appropriately applied to all cases in which the plaintiff seeks to try the title of personal property and recover its possession .

E by articles under seal agreed with W, that for the consideration thereinafter mentioned, he would furnish him with negroes, &c., "all which property is to remain with the said W, on the land where he now resides, for and during the term of ten years, and to pay him annually the sum of, &c.. W agreed that he would pay E one-half of the crops made during the above time, and would superintend and look after all E's business." On the execution of the agreement, the negroes were delivered to W, and remained with him several years, when they ran away and came to the possession of E and R, the other defendant in the writ. HELD: that *replevin* was an appropriate remedy for W; and he was not bound in order to maintain it, either to show a performance, or a readiness to perform the agreement on his part, and that the contract gave him a present and immediate right to the negroes, and to possession for ten years from its execution.

E in 1837, conveyed certain negroes to W, to be retained by him for ten years; some time after the negroes ran away, and came again to the pos. session of E, who in February 1840, executed a deed of trust of all his estate to R. In an action of replevin brought in May 1840, by W against E and R for the negroes, the defendants proved that in March 1840, R called on W, and informed him of his deed, and that he came to demand the land, negroes, &c., of E, then in W's possession, who said, there are the negroes, go and take them, I have no title to them, but I will not give up the land; that two of the negroes in controversy were then in view of the parties at work with other negroes, proved to have been the property of E. Under such a state of facts, the plaintiff, *for the purpose of rebutting the inference that he surrendered and abandoned all right to the negroes,*

may show that immediately after the demand made upon him by R, that he, R, and the witness who proved it, went to the residence of E, where W asked him in the presence of all the parties, whether he had authorised R to interfere with the property mentioned in the agreement of 1837, and that E replied he had not, that his intention was to convey his residuary interest in the property in W's possession.

APPEAL from *Prince George's* County Court.

This was an action of *Replevin*, brought on the 15th May 1840, by *William F. Berry* against *Elisha Berry* (who died before the trial,) and *Robert W. Brooke*, for the negro slaves mentioned in the proof. The slaves were replevied and delivered to the plaintiff.

The defendant pleaded—

I. Property in the defendant.

2. Property in a stranger.

3. *Non cepit.*

4. *Actio non accrevit infra tres annos.*

On these pleas issues were joined, and the jury found the following verdict, viz: that the plaintiff is entitled to the possession of the negroes replevied in this case, to wit, *John, Bill* and *Hanson*, for the unexpired term of ten years, which commenced on the 1st January 1837, and one cent damages.

1ST EXCEPTION. At the trial of this cause, the plaintiff to maintain the issues joined on his part, proved to the jury that for eight or ten years prior to the 1st January 1837, *Elisha Berry*, one of the defendants, against whom the writ in this cause issued, was in the possession of the negroes taken under the writ; that he the said *Elisha Berry*, died in the month of April 1841, and was alive and in being at the period of the execution of the writ. The plaintiff then, for the purpose of showing title in himself, proposed to read to the jury the following articles of agreement, between the said *Elisha Berry* and the plaintiff, dated the 1st January 1837, which are as follows:

"Articles of agreement made, concluded and agreed upon, this 1st day of January 1837, between *Elisha Berry*, of *Prince George's* county, of the one part, and *William F. Berry*, of

the same place, of the other part, as follows, to wit: The said *Elisha Berry,* for the consideration hereinafter mentioned, doth for himself, his executors and administrators, covenant, promise and agree, to and with the said *William F. Berry,* his executors, administrators and assigns, that he the said *Elisha Berry,* shall and will furnish him the said *William F. Berry,* with the following property, to wit, one negro man named *John,* one negro man named *Andrew,* one negro man named *Robert,* one boy named *John,* one boy named *Hanson,* one boy named *Robert,* one woman named *Beck,* and one boy named *Bill;* two plough horses, two oxen, ploughs, cart, and other plantation utensils; all which property is to remain with the said *William F. Berry,* on the land where he now resides, for and during the term of ten years from the date hereof.   And he the said *Elisha Berry,* doth further covenant and agree to pay to the said *William F. Berry,* one hundred and fifty dollars, annually; and the said *William F. Berry,* on his part, doth hereby covenant and agree, that he will pay to the said *Elisha Berry,* the one-half of the crops made by him the said *William F. Berry,* for and during the term above named, after deducting the expenses for making the said crops.  And he the said *William F. Berry,* doth covenant and agree to superintend and look after all the said *Elisha Berry's* business.  For the true and faithful performance of the foregoing covenants and agreements, the said parties do hereby respectively bind themselves and their respective heirs, executors and administrators, each to the other, his executors and administrators, in the sum of one thousand dollars.   In witness whereof, they have hereunto set their hands and affixed their seals, the day and year above written.          ELISHA BERRY, (Seal.)

W. F. BERRY, (Seal.)"

Signed, sealed and delivered in the presence of

   *Enos D. Furgusson.*

But the defendant objected to the admissibility of said articles of agreement, upon the ground that there was no evidence to shew that he claimed title under the said *Elisha Berry,* or that there was any connection between them.  The court,

(STEPHEN, C. J. and KEY, A. J.,) however, overruled the objection, and suffered the said paper to be read to the jury. To which opinion of the court, permitting the said paper to be read to the jury, the defendant excepted.

2ND EXCEPTION. After the evidence mentioned in the preceding bill of exceptions, (and which is to be considered part of this exception,) had been offered by the plaintiff, the plaintiff further proved, that the negroes replevied in this cause, are part of those mentioned in the said agreement, and that immediately on the execution of the said agreement, the said negroes so replevied, were delivered into the possession of the said plaintiff, and remained with him until the spring of the year 1840, when they ran away, and came to the possession of *Elisha Berry* and the defendant. The defendant thereupon insisted, that upon all the preceding evidence, the plaintiff had not shewn himself entitled to recover in the present action.

1. Because he had not shewn that he had performed or offered to perform the covenants to be performed on his part, and

2. Because his remedy, if he has any, is by an action of debt or covenant on the said agreement, and prayed the court to instruct the jury accordingly. But the court (STEPHEN, C. J. and KEY, A. J.,) overruled the objection and refused the instruction. The defendant excepted.

3RD EXCEPTION. This being an exception by the plaintiff below, who did not appeal, is not decided by this court, but inserted as containing a part of the evidence.

At the trial of this cause, after the evidence in the preceding exceptions, which by agreement is to be taken as part of this exception, the plaintiff to maintain the issues on his part joined, offered in evidence to the jury, the articles of agree·ment bearing date the 1st day of January 1837, having first proved their due execution by the plaintiff and the defendant *Elisha Berry*.

The plaintiff also proved, that on the day of the execution of the said paper, the negroes in controversy in this cause, were in virtue of said agreement, put into the possession of the plaintiff, and that they remained in his possession until the

spring of 1840, when they ran away, and were in the possession of the said defendants *Elisha Berry* and *R. W. Brooke*, when the writ of replevin issued in this cause. The plaintiff also proved, that for some eight or ten years prior to the execution of said paper, the negroes replevied in this cause, were in the possession of *Elisha Berry*.

The defendant then, in support of the issues on his part joined, offered to read in evidence to the jury, a deed of trust from *Elisha Berry* to the defendant *R. W. Brooke*, dated 24th February 1840, which is as follows :

This indenture made this twenty-fourth day of February, in the year of our Lord one thousand eight hundred and forty, between *Elisha Berry*, of, &c., and *Robert W. Brooke*, of, &c., witnesseth, that for and in consideration of the sum of, &c., to him in hand paid by the said *Robert W. Brooke*, the receipt, &c., he the aforesaid *Elisha Berry*, hath given, granted, &c., and by these presents doth give, &c., unto the said *Robert W. Brooke*, his heirs and assigns, all that tract or parcel of land called and known by the name of *Good Luck* or *Springfield*, upon which the said *Elisha Berry* now resides, lying and being in the county, together with all and singular the buildings, &c., and all the estate, right, title and interest whatsoever of him the said *Elisha Berry*, which he hath, either in law or equity, of, in and to, &c., &c.; together with all my slaves, that I have now in my possession, to wit, &c.; together with all my household and kitchen furniture, and all the farming utensils, and all the plantation stock; as also the whole or whatsoever portion or portions of the estate of the late *Nancy Berry*, deceased, which is devised to me in her will, and to which I may be entitled to in the distribution of her estate, whether real or personal, now or at any time hereafter, whatsoever consisting. To have and to hold all the aforesaid tracts, parts or parcel of land, and all the said negroes and slaves, household and kitchen furniture, plantation stock, goods and chattels, whether in possession, remainder or reversion, unto him the said *Robert W. Brooke*, his heirs and assigns forever. *In trust, nevertheless, to have and to hold the above described*

real and personal property forever, in trust, to and for the use, intent and purpose, that is to say, for the use of my five children, *Mary Ann Brooke*, &c.; nevertheless, to have and to hold unto him the said *Robert W. Brooke*, his heirs and assigns, the rents, issues and profits of the aforesaid parts or parcels of land, together with all the profits which may in any manner issue out of, or appertain to all or any part of the above described land, goods and chattels, to and for the use of the said *Mary Ann Brooke, Louisa Berry, William Berry, Nancy Berry* and *Eliza Berry*. And the within *Elisha Berry* himself, be well supported as long as he may live, out of the within named real and personal estate heretofore named in said deed, and for no other use or behoof whatsoever; and the aforesaid *Elisha Berry*, for himself and his heirs, executors and administrators, doth covenant and agree with the said *Robert W. Brooke*, his heirs and assigns, that he the said *Elisha Berry*, and his heirs, the aforesaid tracts, parts or parcels of land, hereby granted, bargained and sold, with the appurtenances hereunto belonging, to him the said *Robert W. Brooke*, his heirs and assigns, against the said *Elisha Berry*, and his heirs, and all claiming under him or them, any right, title or interest in and to the same, or any part thereof, shall and will, and by these presents forever warrant and defend. In testimony whereof, I have hereunto set my hand and seal, the day and year above written.                    ELISHA BERRY, (Seal.)

    Signed, sealed and delivered in the presence of us,
    *John Anderson, Thomas Clements.*

The said deed embracing the negroes in controversy. And further offered to prove by credible witnesses, that sometime in March 1840, the defendant *R. W. Brooke*, called on the plaintiff, and stated to him, that he had obtained a deed of trust from *Elisha Berry* to him, of all the property of *Elisha Berry*, in the possession of the plaintiff, and that he came to demand the land, negroes, farming utensils, and all other property of *Elisha Berry*, then in the plaintiff's possession, and that the plaintiff said, there are the negroes, go and take them, I have no title to them, but I will not give up the land; and also

proved, that two of the negroes in controversy, were then in view of the parties at work with other negroes, proved to have been the property of *Elisha Berry.*

The plaintiff then to rebut the evidence so offered by the defendant, offered to prove by a competent witness, that after the execution of the said deed of trust, and after the said negroes were replevied in this suit, he the witness, was in company with *Elisha Berry* at his house, together with the plaintiff, when *Elisha Berry* told plaintiff in the presence of witness, that he had never authorised the defendant *Brooke,* to interfere with the plaintiff's possession of said negroes, and that he did not design by the deed of trust aforesaid, to authorise said *Brooke* to interfere with the possession of any property embraced in the articles of agreement of January 1837.

The defendant, by his counsel, objected to the admissibility of said testimony, so proposed to be offered by the plaintiffs, upon the ground that said evidence would conflict with his said deed of February 1840, and that the grantor in said deed, after its execution, could not by any act or declaration of his, impair the rights of the grantee, or of the parties beneficially interested therein, and the court being of that opinion, excluded said proof from the consideration of the jury; from which opinion of the court, and their refusal to permit said proof to go to the jury, the *plaintiff,* by his counsel, prayed leave to except.

4TH EXCEPTION. After the evidence contained in the preceding exceptions, and which are made part of this exception, had been offered to the jury, the plaintiff offered to prove by *Elisha Perry,* a competent witness, that immediately after *Robert W. Brooke* had demanded the property in question from the plaintiff, as proved in the preceding exceptions, and on the same day, the said *Robert W. Brooke, William F. Berry,* the witnesses by whom the demand was proved, and the said *Elisha Perry,* went together to the residence of *Elisha Berry,* distant about four miles from the place where the demand was made; that *R. W. Brooke* went after *Elisha Berry,* and when they were all together, a conversation ensued, in which *William F.*

*Berry* asked *Elisha Berry,* in the presence of *Robert W. Brooke,* whether he had authorised *Robert W. Brooke,* to demand or interfere with the property mentioned in the said agreement of January 1837, and *Elisha Berry* replied, that he had not authorised him to take possession of, or interfere with that property, and that he only designed by the deed of February 1840, to give him present control over the property at *Springfield,* and to convey his residuary interest in the property in *William F. Berry's* possession.

The defendant objected to the admissibility of this evidence, on the ground that it would conflict with the said deed of February 1840, and because the grantor in that deed, could not after its execution, by any act or declaration of his, impair or affect the rights of the grantee, or of the parties beneficially interested therein; but the court overruled the objection, and permitted the said evidence to go to the jury. The defendant excepted.

The verdict being for the plaintiff, the defendant took this appeal.

The cause was argued before ARCHER, DORSEY, CHAMBERS and SPENCE, J.

By J. JOHNSON and T. F. BOWIE for the appellants, and By T. G. PRATT and C. C. MAGRUDER for the appellee.

ARCHER, J., delivered the opinion of this court.

The inadmissibility of the evidence of the articles of agreement set out in the first bill of exceptions, was put in the court below, upon the ground that there existed no privity between *Brooke* and *Elisha Berry,* or that he claimed title under *Elisha Berry;* this could certainly furnish no justifiable ground for the rejection of the evidence. If the articles of agreement furnished evidence that *Elisha Berry's* title had passed to the plaintiff, (the plaintiff having first shown that *Elisha Berry* had title,) they established his right to recover against the defendant, whether the defendant claimed title under *Elisha Berry* or not, and whether he had any connexion with *Berry* or not.

21    v.1

If a contrary doctrine prevailed, every wrong-doer would defend himself against a plaintiff's title, however clearly made out, if he could establish the fact that he were not in privity with the party from whom the plaintiff deduced his title. Such a doctrine would be subversive of all the principles upon which the action is founded. This ground is, however, not insisted upon in this court, but it is said, the articles of agreement should be rejected as evidence, because they are not accompanied with any proof, or offer to prove, or statement of counsel, that they have proof of the identity of the negroes replevied, and the negroes named in the agreement. It is admitted that the question before us is, the admissibility of the evidence, and not the correctness or incorrectness of the particular ground upon which the court below may have decided the question; and it must be admitted, that without some evidence showing the identity of the negroes, the articles of agreement would not establish the plaintiff's title. But having shown title in *Elisha Berry*, these articles of agreement constituted a link in the plaintiff's title, and would or would not be evidence in the cause upon the establishment or failure to establish the identity of the negroes. Before, however, the plaintiff has an opportunity of disclosing his whole case, the evidence is objected to upon a ground which assumes the identity of the negroes, placing the inadmissibility of the evidence upon the want of privity between *Elisha Berry* and the defendant. In such a state of the case, we apprehend the court below were fully justified in acting upon such assumption in forming their judgment on the admissibility of the evidence. But independent of this ground, we think the court were right, because the bill of exceptions contains evidence proper for the consideration of the jury, as to the identity of the negroes. It is proved, that for ten years anterior to the 1st of January 1837, *Elisha Berry* was in possession of the negroes replevied in this suit, to wit, *Bill*, *John* and *Hanson*, and the articles of agreement stipulate that *Bill*, *John* and *Hanson*, among others, shall be furnished to *Berry*, the plaintiff, and shall remain with him for ten years from the date thereof. Now this was certainly evidence from

which it could be inferred that the negroes replevied and the negroes in the agreement were the same, unless it were shown on the part of the defendant, that *Elisha Berry* had other negroes of the same name. We therefore think the court were right in their opinion in the first bill of exceptions.

That an action of replevin is an appropriate remedy in this case, we cannot doubt. By the law of *Maryland* it is appropriately applied to all cases in which the plaintiff seeks to try the title to personal property, and recover its possession, and we are clearly of opinion, that the plaintiff was entitled to the possession of these negroes, which had been delivered to him under the agreement, and that his right of possession was not divested by their running away and getting into the possession of the defendants, and that as preliminary to the establishment of such right of possession, no evidence whatever was necessary to be furnished of a performance, or a readiness to perform the agreement on the part of the plaintiff.

The covenants in this deed are independent. The covenant to deliver the negroes to the plaintiff, is first in order of time, for without the negroes the plaintiff could not make a crop to divide according to the agreement, with the defendant *Berry*, and if there had been a failure to deliver the negroes, an action could have been immediately sustained on the covenant. There existed a present and immediate right in virtue of the contract to the possession of the negroes, and the contract was executed by the parties in conformity with this construction, and the plaintiff was entitled to the possession for the whole term of ten years by the express stipulations of the contract. Neither party possessed any power to rescind the contract against the will of the other, nor did the non-performance by the plaintiff on his part (if such were the fact,) destroy the rights which he had acquired under the contract. The casual possession of the negroes acquired by the defendant *Berry*, did not enable him to retain the negroes, and to treat the agreement as a nullity. That it was the intention of the parties to the contract, that possession of the negroes should, immediately on the execution of the agreement, pass to *William F. Berry*, is clear, not

only from the acts of the parties, but from the terms of the agreement. The negroes are proved to have been immediately delivered, and the agreement stipulates that he shall have them for ten years from the execution of the agreement. The case of *Culver vs. Shriner*, reported in 5 *Harr. & John.* 219, does not militate against our views in this case. On the contrary, they are strengthened by the opinion expressed by the court in that case. The court there say, that "from every part of the arti-"cles entered into between the parties, it is most evident that "each relied upon the instrument of writing to compel a com-"pliance with their respective stipulations." But in this case no such reliance was placed, so far as regards the delivery of the negroes in controvery. They were to pass upon the exe-cution of the agreement; for, by the terms of the agreement, *William F. Berry* was to be furnished with the property *for ten years from the date of the agreement.* It is apparent that the action of replevin would have been sustained in the case of *Culver vs. Shriner*, if the contract had been executed; for the court say, "if it had appeared that *Shriner* had complied with the contract, that the mother of the children in controversy had been kept on the place where the children were born, and that *Shriner* had got a possession which *Kemp's* executor sought to disturb, then it might be said that the property and every right to the issue passed, for it was both a covenant and a grant." In the case before the court, the right of possession was intended to pass on the execution of the agreement, and according to the agreement the possession did actually pass, and the rights of *W. F. Berry* were thus perfected in the pro-perty. No act was to be done by *W. F. Berry*, as preliminary to the accrual of his title. The consideration which he was to give, arose after the crops were made with the hands and im-plements furnished, and the property thus acquired could not be divested either by a failure to comply with his part of the contract, or by the negroes getting into the possession of *Eli-sha Berry* by absconding.

The fourth bill of exception is taken upon the admission by the court of a certain conversation passing between sundry

witnesses and *Elisha Berry*, in the presence of the other defendant *Brooke*, in reference to *Elisha Berry's* design and intention in executing the deed of 1840, in relation to the negroes in controversy. This evidence is objected to as inadmissible upon the ground that no parol evidence can be received to contradict a deed. Had evidence been offered for such a purpose, it would have been clearly inadmissible. But it appears from the evidence detailed in the third bill of exceptions, which is made a part of the one now under consideration, that evidence had been offered on the part of the defendant to show that after the deed had been executed, upon a demand made upon the plaintiff for the negroes in controversy, he had surrendered and abandoned all right to them. The evidence now offered was admissible for the purpose of rebutting the evidence thus offered on the part of the defendant. That he should have sought out *Elisha Berry* immediately after the language attributed to him, and should have demanded of him whether he authorised *Brooke*, the grantee in the deed, to demand or interfere with the property mentioned in the agreement of January 1837, was calculated to induce the jury to believe that he had not surrendered the property, and was proper evidence to be submitted to them, on the question, whether he had or had not abandoned the property.

JUDGMENT AFFIRMED.