## The Fort Wayne, Jackson & Saginaw Railroad Company v. Juliza A. Gildersleeve.

*Employes: Risks incident to the business.*   Employes are held bound to bear the consequences of all the ordinary risks incident to their employment.

*Master and servant: Implements of improper construction: Negligence.*   A servant has a right to repose confidence in the prudence and caution of his employer and to rely upon his not putting him in charge of implements which, from improper construction or other causes, are so dangerous that a prudent man would not make use of them.

*Master and servant: Dangerous implements: Risks incident to the employment.*   Whether where one undertakes the employment, or continues in it without protest, notwithstanding he knows that by so doing he is and will be required to make use of an implement of improper construction and dangerous, the liability to injury therefrom is to be considered as an exception to the rule as to risks incident to the employment:—*Quære?*

*Employers: Employes: Implements: Prudence.*   An employer cannot properly be held to be under so strict obligation to his servants as to be required under all circumstances to make use only of the safest known appliances and instruments, and to be held responsible for any failure to

discard what is not such and to supply its place with something better
and safer.

*Railroads: Cars: Coupling: Negligence: Servants.* A railroad company
is held not to be guilty of such negligence in making use in its trains of
an old mail car which was lower than the others, as to be liable to its
servant who knowingly incurred the risk, for an injury resulting from
the coupling of such old car with another, though the danger be greater
than with cars of equal height.

*Evidence: Statements: Agency: Negligence.* A statement made by the
mechanic in charge of the shops where the defendant procured its repairs
to be made, in reply to complaints made to him of the car in question,
that it ought not to be made use of for coupling with the coupler on
the other cars, is not evidence of assurances by defendant that its use
would be discontinued, and has no tendency to make out a case of cul-
pable negligence on the part of the defendant towards its servants.

*Heard October 29.     Decided January 5.*

Error to Jackson Circuit.

*John D. Conely,* for plaintiff in error.

*F. & R. Livermore* and *G. T. Gridley,* for defendant in
error, cited: *Davis v. D. & M. R. R. Co.,* 20 *Mich.,*
126 ; *Laning v. N. Y. C. R. R. Co.,* 49 *N. Y.,* 521 ;
*Flike v. B. & A. R. R. Co.,* 53 *N. Y.,* 549 ; *Gilman
v. Eastern R. R. Co.,* 10 *Allen,* 233 ; 13 *Allen,* 433 ;
*Huddleston v. Lowell Machine Shop,* 106 *Mass.,* 282.

COOLEY, CH. J :

The plaintiff, as administratrix, has recovered against the
defendant a judgment for damages occasioned by the killing
of the intestate, who was a servant in defendant's em-
ploy.   The accident occurred while the intestate was engaged
in coupling two cars, one of which was lower than the other,
rendering the act of coupling peculiarly difficult and dan-
gerous.   The gravamen of the complaint is, the negligence
of defendant in making use of this low car, and subjecting
its servants to the consequent risks.   It is not claimed that
the difficulty and danger were unknown to the intestate ; on
the contrary, much evidence was given on the part of the
plaintiff to show that the danger was well understood by the

intestate, and that the car had a bad reputation among the employés of defendant. What the bad reputation was for does not very distinctly appear, though the evidence tends to show that it was rather because its construction,—it being an old mail car,—made it inconvenient for use, than for any other reason. This, however, is not very material. No question is made but that any difficulty that existed in coupling the car was understood by the intestate.

The question in the record is, whether there was any evidence tending to establish a claim against the defendant. On the argument it has been assumed on both sides that the rule of law which leaves the servant to bear the consequences of all the ordinary risks incident to his employment ought to remain undisturbed. Both parties rely upon the case of *Davis v. Detroit & Milwaukee R. R. Co., 20 Mich., 105,* in which that rule was examined and approved, as a rule reasonable in itself as it affected the particular relation of employer and employed, and as being also an important rule of public policy in its tendency to ensure caution and vigilance on the part of persons employed.

The plaintiff relies upon exceptions to that rule and claims to recover on the ground, either that the defendant was guilty of a breach of duty to its employés in making use of a dangerous vehicle, or that it was culpable in not discontinuing its use in accordance with what were equivalent to assurances to the persons employed that the car should be replaced by another. If the evidence tends to show a breach of duty in either of these particulars, it is insisted there was a case for the jury based upon the negligence of the employer, the risks of which the employed is never understood to assume.

Undoubtedly a servant has a right to repose confidence in the prudence and caution of his employer, and to rely upon his not putting him in charge of implements which, from improper construction or other cause, are so dangerous that a prudent man would not make use of them. If the

servant is injured in consequence of this confidence being abused, he ought to be remunerated.   But where the difficulties in the case are fully known to him, and he undertakes the employment, or continues in it without protest, and makes use of the implement without there being in the case any thing in the nature of compulsion, it is a serious question whether his case is within the reason of recognized exceptions to the general rule.   This, however, is a suggestion which will be passed over without discussion at this time.

The car which was the cause of the injury in this case was not in itself dangerous, or unfit for use.   In coupling it with other cars peculiar caution was requisite, making it more liable to cause injury than would be a car of more modern construction.   Its use, therefore, made the employment more dangerous than it otherwise would be.   In that particular the case may be compared to that of a farmer, who, with knowledge on the part of himself and those in his employ, that a horse he has had in use is disposed to be fractious and unmanageable, continues nevertheless to use him in his business.   It may be compared to that of the merchant who continues to make use of a fluid for light, when something else which is within his reach has been demonstrated by experience to be safer.   So far as we can perceive, the case of the manfacturer would not be different in principle, who should continue the use of a building which, in the event of a conflagration, would subject his employés to greater risks than would one of different construction.   Comparisons innumerable might be made with this case in all the avocations of life.

Now any rule on this subject must be a general rule, and not one to be applied to railroad companies alone.   It will be perceived that the risk in the case was such as would affect only the person employed, and that whatever duty was imposed by the circumstances upon any one, could have had reference only to such persons.   The case is consequently

divested of any question except such as would concern the
relation of master and servant, and the same rule would
govern the case that would govern were the question to arise
between the farmer, the mechanic, or the manufacturer, and
the persons in his employ. And treating it as a question
of such broad application, we do not perceive any ground
upon which the plaintiff's case can safely be planted, which
comes short of this: that the employer is under obligation
to his servants under all circumstances to make use of the
safest known appliances and instruments, and is responsible
for any failure to discard what is not such, and to supply
its place with something safer.

Any doctrine so far reaching as this would manifestly be
destructive of the general rule, and would almost make the
employer the guarantor of his servant's safety in his em-
ploy. But under any less serious responsibility, it would be
impossible to sustain a judgment against this defendant,
upon the sole ground of a failure to discontinue the use of
this car. In any light in which the question can be viewed,
no breach of duty can be charged against the defendant,
unless it be the duty to make the employment as safe for
the persons employed as was possible. Certainly, in making
use of this car no confidence which was reposed in the pru-
dence and caution of the employer has been betrayed. The
difficulties, as has already been stated, were fully known
and understood, and the intestate voluntarily continued to
encounter the risks.

On the other ground we find it equally difficult to dis-
cover what there was to go to the jury. It was not shown
that any complaint was made to the company, or its super-
intendent, that there was danger in the use of the car, or
that any assurances were given that the use would be dis-
continued. There is no ground in the evidence for a sug-
gestion that the intestate continued in the business because
of assurances from any person in authority, that this car
would be taken off. There is some testimony of complaint

made to the mechanic in charge of the Michigan Central car shops at Jackson, where the defendant had its repairs made, and of a reply made by him, that the car ought not to be made use of for coupling with the coupler on the other cars; but obviously there was nothing in this to charge the defendant with any assurances, or to affect the case in any manner.

The judgment must be reversed, with costs, and a new trial ordered.

The other Justices concurred.