# John A. Hewitt v. The Flint & Pere Marquette Railroad Company.

*Negligence—Master and servant—Fellow-employe—Construction of railroad—Charge to jury—Evidence.*

1. It is the duty of a railway company to use *due care* to provide materials, machinery, and other means by which its employés are to perform the work for which they are employed, safe for their use, and to keep the same in repair and in good order, so as not to unnecessarily expose them to danger; and when it has done this, said employés assume the risks and dangers incident to the company's business, including those originating from the negligence of their fellow-servants.

2. While it is the duty of a railway company to use *reasonable* care in the proper construction of its road and side tracks, yet, if it fails so to do, and one of its engineers is injured in consequence of such default, he ought not to recover for such injury if he had equal means of knowledge with the company of such defect, and failed to protest against its negligence in the premises.

3. Where, in a suit against a railway company for injuries sustained by a collision with a flat car which had by some means run out from a side track onto the main line, there was no testimony tending to show that the side track was not in proper condition, or in such condition that, in the use made of it by the company, exercising ordinary care, a flat car standing upon the siding was in danger of coming out upon the main line, nor that ordinary care was not observed by the company in placing the car where it did upon the side track, and which it had been accustomed to do, with an experience of safety, for more than 16 years,—
*Held*, that the jury should have been instructed, as requested by the defendant, that it was not its legal duty towards the plaintiff, an engineer in its employ, to provide said side-track with stop-blocks, and that its omission so to do was not actionable negligence; and that a modification of such request by leaving it for the jury to find whether such car was liable to get out onto the main line by reason of any peculiar construction or condition of the side-track was error.

4. Negligence, when relied upon, must be proved. It may be inferred from *facts* proved, but never from mere *conjecture*.

5. A railway company is under no legal obligation to maintain station agents at flag stations for the protection of its employes.

67 61
67 638

67 61
84 655

67 61
89 178

67 61
96 548

67 61
97 270

67 61
j122 193

67 61
124 42

67 61
125 352

67 61
s34NW 659
132 ¹541

67 61
153 ⁸177

6. Under the facts in this case, it was not the legal duty of the defendant to provide its flat car which it left standing upon the side track at County Line station with brakes; and if the jury find that it had no brakes at time of the accident, this does not establish the negligence alleged in that regard against the defendant, nor entitle the plaintiff to recover.

7. *Suggesting* or *assuming* the *existence* of a fact, not conceded in the case, in the charge to the jury, is damaging error.

8. A railway company is not bound to change its manner of using its side tracks, nor adopt the most approved ways or appliances in business; and if one of its servants, knowing, or having ample means of knowing from long-continued employment, the way and manner in which the side tracks are used, continues in the employment without complaint, and if from such way and manner is subjected to risks or accident, he is presumed to assume such risks, and, if injured thereby, cannot recover.

9. It is the duty of an engineer to *know* the duties of a station agent along the line of the road he is running upon, so far as they relate to the proper discharge of the engineer's duty.

10. Negligence in a servant may consist, and often does, in failing to *know* as well as in failing to *do*; and such is always the case where it is his duty to inform himself and to know.

11. The jury must receive the law and the testimony in open court, and they should not be allowed to take to the jury-room the requests to charge given by the court.

12. In a case where the proof tended to show, in so far as it bore upon the subject, that no agent was kept at a railway station where an accident occurred, evidence of the railway company's rules relating exclusively to the duty of such agent is improperly admitted.

Error to Saginaw.    (Gage, J.)    Argued June 21 and 22, 1887.    Decided October 6, 1887.

Case.    Defendant brings error.    Reversed.    The facts are stated in the opinion.

*William L. Webber* (*Wisner & Draper*, of counsel), for appellant.

*Camp & Brooks* (*Hanchett & Stark*, of counsel), for plaintiff.

SHERWOOD, J.    The plaintiff in this case resides at East Saginaw.   He is an engineer, about 53 years of age, and for many years has been in the employment of the defendant.

On the evening of April 10, 1883, he was in charge of an engine running a passenger train from Wayne Junction to East Saginaw, on the defendant's road, and this had been his route during the previous eight years.

In passing County Line station on that evening his engine collided with a flat car which had, within about half an hour previous, by some means left the side track at the station, and run down onto the main line, and there stood, partly off the track, when the plaintiff's engine struck it.   By the collision the locomotive was thrown off the track, and the plaintiff was permanently injured.

The collision occurred between 9 and 10 o'clock in the evening.   After the accident occurred, the plaintiff remained in the employment of the company, working part of the time, after he recovered from the shock received in the collision. He regularly called for and received his monthly pay of $100 until October 1, 1885.   The sum paid from the time he was hurt until he brought this suit amounted to about $3,000.

On the twenty-seventh day of May, 1886, this suit was brought to recover for his injuries, basing his claim upon the ground that the car with which his engine collided was on the main track at the time through the negligence of the defendant or its servants.   The declaration sets out the negligence claimed fully, and states the damages at $50,000.   The defendant pleaded the general issue, with notice that, if plaintiff had any such claim, he settled and compromised it with defendant for the sum of $2,966.67 in full satisfaction thereof.   The cause was tried at the last January term of the Saginaw circuit, and resulted in a verdict and judgment for the plaintiff for the sum of $22,000.   The defendant brings error. Sixty-nine exceptions are relied upon to reverse the judgment.

In the court below, before the jury, the plaintiff submitted that the defendant was liable for its claimed negligence in the premises for the following reasons:

"1. Because the defendant left this flat car, being without brakes, standing upon this side track.

"2. Because there were no stop-blocks upon this side track to prevent cars left thereon from running out onto the main track.

"3. Because there was no agent in charge of the station to see that the road was kept clear and free from obstructions.

"4. It was negligence upon the part of the defendant to allow the car to get upon the main track."

The defendant's contention upon the trial was that the company was guilty of no negligence in the premises; that its road, main line, and siding were properly constructed and in good condition, and had long been used; that its side track was a safe and proper place for receiving and keeping cars when not disturbed by trespassers; that the engine and cars used by the defendant, and the flat car with which the collision occurred, were all sound and in good repair; that the duty which the defendant owed to the plaintiff was only that of master toward servant in his capacity of engineer, and which had always been well discharged by the company; and that the plaintiff approached the station under too high a rate of speed.

In addition to the general verdict, the jury made special findings to the following questions:

" Q. Do you find from the evidence in this case that the flat car with which plaintiff collided passed from the side track onto the main track by means of motion imparted to it by the special freight train which backed onto the side track the night of the accident?

"A. Yes.

" Q. Do you find from the evidence in this case that the flat car mentioned in the preceding question passed from the side track to the main line track by reason of motion imparted to it by the wind?

"A. Yes.

" *Q.* Do you find from the evidence in this case that said flat car was intentionally put upon the main track by some person or persons unknown, for the purpose of causing a collision?

" *A.* No. ·

" *Q.* If you say no to the foregoing three questions, state what you find from the evidence in this case it was that set the flat car in motion, and caused it to run onto the main track?  [No answer.]

" *Q.* Do you find from the evidence in this case that the plaintiff was duly observing defendant's rule requiring him to observe care in approaching stations [being rule 84 read in evidence] at the time he collided with the flat car?

" *A.* Yes."

The record contains all the evidence in the case, and counsel for the defendant rely upon all the exceptions taken.  In the view I take of the case as presented by the learned counsel upon both sides, it will be unnecessary to consider all of them.   It is unnecessary now to decide whether or not the case is a proper one for the jury upon its facts, if that question alone were to arise, as some were improperly brought into the case, and I think we may very properly omit the discussion of the exceptions which relate to the subject of damages.

The principles of law involved in the consideration of the questions raised are mainly those relating to the duty of the company towards the plaintiff in the capacity in which he was engaged.   These have been so frequently under consideration by this Court that a simple statement of them is all that will be attempted on this occasion.

They required the company to use due care to provide materials, machinery, and other means by which the plaintiff was to perform the work for which he was employed, safe for his use, and to keep them in repair and in order, so as not unnecessarily to expose him to danger ; and when the company had done this, the plaintiff assumed the risks and dangers incident to the company's business.    *Davis v. Railroad Co.,* 20 Mich. 105 ; *Railway Co. v. Bayfield,* 37 Id. 205;

*Railroad Co. v. Dolan,* 32 Id. 510 ; *Swoboda v. Ward,* 40 Id. 420 ; *Hathaway v. Railroad Co.,* 51 Id. 253 ; *Huizega v. Lumber Co.,* Id. 272 ; *Mining Co. v. Kitts,* 42 Id. 34 ; *Railroad Co. v. Smithson,* 45 Id. 212 ; *Railroad Co. v. Austin,* 40 Id. 247 ; *Railroad Co. v. Gilbert,* 46 Id. 176 ; *Smith v. Potter,* Id. 258 ; *Railroad Co. v. Gildersleeve,* 33 Id. 133 ; *Railroad Co. v. Taft,* 28 Id. 289 ; *James v. Mining Co.,* 55 Id. 335 ; *Hoar v. Merritt,* 62 Id. 386.

Included in the risks assumed by the plaintiff in this case were those originating from the negligent acts and omissions of his fellow-servants in the employment of the company. *Railroad Co. v. Taft,* 28 Mich. 289 ; *Smith v. Potter,* 46 Id. 258 ; *Railroad Co. v. Leahey;* 10 Id. 199 ; *Greenwald v. Railroad Co.,* 49 Id. 197 ; *Railroad Co. v. Gildersleeve,* 33 Id. 133 ; *Davis v. Railroad Co.,* 20 Id. 105 ; *Mining Co. v. Kitts,* 42 Id. 34.

While it was the duty of the company to use reasonable care in the proper construction of its road and side track, still, if the side track was not so constructed, and injury in consequence occurred to the plaintiff, when he had the same or equal means of knowledge with the defendant of such defect, and did not protest against the negligence now complained of, he ought not to recover. *Railroad Co. v. Gildersleeve,* 33 Mich. 133 ; *Davis v. Railroad Co.,* 20 Id. 105 ; *Railroad Co. v. Dolan,* 32 Id. 510 ; 2 Thomp. Neg. 1008, and cases cited ; *Railroad Co. v. Barber,* 5 Ohio St. 541.

County Line station was at a highway crossing on the county line, and contained but a few buildings. It was a flag station only, and the train upon which he was injured did not regularly stop at this station. The side track at this place was about 2,100 feet in length. The tracks run mainly north and south. There are no depot buildings, or other accommodations for passengers, except a platform, which stands on the east side of the main track, and the highway crossed the same a few feet north of the siding. The side track com-

menced a few feet south of the highway on the west side of the main line, and extended south the distance before stated. This siding was used principally for the purpose of holding trains while others passed, and cars to be loaded with wood.

The company had a side track at County Line station as early as 1872. The track and grading, however, were changed in 1882, and the testimony of General Roadmaster George M. Brown is to the effect that the rebuilding of the track on the siding was done under his supervision, and that the track was laid a foot and a half below the main track, and that the side track in April, 1883, and prior thereto, was in such condition as to make the use of stop-blocks unnecessary, but that since that time, and prior to April, 1886, the side track has been raised, and the grade made nearly parallel with the main track, and in April, 1886, it was from two to eight inches higher than it was in April, 1883.

It is not claimed that the cars or engines furnished to the plaintiff for use were broken or defective or dangerous, nor that the track of the company was broken or out of repair; but it is claimed that the side track was dangerous for the storage of cars without brakes upon them, or stop-blocks, to hold them in place, and keep them from running out on the main track. It is further undisputed that the car which left the side track was furnished with no brakes, and the siding with no stop-block, at the time of the accident; but the car had stood upon the siding about four weeks previous to the accident, and on one or two occasions was moved backward and forward by young men and boys.

It was also claimed by the plaintiff that the car could be moved by the wind, which was blowing the evening he was injured, and also might have been moved by some force imparted to it by a freight train which ran in upon the siding about 35 minutes before the collision, and there remained

until a train going south had passed, and then drew out. No one, however, saw the freight train touch or come in contact with the flat car while the former was upon the siding.

The record discloses nothing but mere conjecture how, and by what power, and in what manner, the car was run upon the main track and placed in the position it was found when the plaintiff's engine struck it. The defendant, however, without pretending to any knowledge as to how the car was moved out on the main line, advanced a theory really quite as plausible upon the subject as any suggested by the plaintiff, which was that some person or persons, through malicious motives, took that occasion and such means to obstruct the track on the defendant's main line, in such manner as to cause the collision that occurred, and actually gave some testimony which tended in that direction.

Railroading has come to be one of the great interests in this country. It is a business in which many things are settled in conducting it, and all are easily understood. They enter into good railroading, and make certain the standard of duty. As an instance, it is now well understood how tracks should be made, and of what material, and upon what grade, to be reasonably safe, and, in case the grade is changed, what appliances should be used to secure safety; and if these things are all observed and done as good railroading requires, the company's duty in those respects is fully discharged.

In this case, it is not contended but that the defendant procured the services of competent and skillful servants, engineers, and mechanics in the grading and construction of its tracks at that station, and its testimony is to the effect that the tracks were properly made and constructed. It is true, the contrary is claimed by the plaintiff, but the record contains no proof to support the claim.

It is also claimed by the plaintiff that it was negligence not to furnish the side track with stop-blocks; that the company

omitted its duty in that regard; and that the plaintiff was ignorant of such omission, and therefore knew not of the danger, and that it was not his duty to know. This may be so. There is nothing contained in the record more than presumption to the contrary, and it must prevail until overthrown. The plaintiff's duty in the premises depended upon circumstances. *Railroad Co. v. Swett*, 45 Ill. 197; *Porter v. Railroad Co.*, 60 Mo. 160; *O'Donnell v. Railroad Co.*, 59 Penn. St. 239; *Harrison v. Railroad Co.*, 31 N. J. Law, 293; *Goheen v. Railway Co.*, 3 Cent. Law J. 382; *Mehan v. Railroad Co.*, 73 N. Y. 585.

The plaintiff in this case had been railroading about 30 years at the time he was hurt. During that period he had served as fireman, brakeman, baggageman, engineer on a freight train, and in the same capacity on a passenger train. His service for defendant commenced in 1871. He was then an engineer of a freight train, and in a year thereafter was transferred to an engine on a passenger train, and ran from Lake to Saginaw for several years, and was then assigned to duty on the line between Wayne Junction and East Saginaw, and made this run every day for the period of about eight years immediately previous to the time he was hurt, and was then making his trip north from Wayne Junction. He was familiar with the station and grounds and the siding; had passed it twice a day during the last eight of the twelve years he had been in the defendant's employment. It was a station at which it was his duty to stop when signaled for that purpose, and he was accustomed to stop his train there more or less every week. It would seem that he must have been some-what acquainted with the situation of the grounds and the ordinary dangers, if any, surrounding them.

The platform car which caused the accident had stood upon the track for a month, and during the entire existence of the siding no car was shown ever to have left it before without being moved by the defendant's servants. Those connected

with the freight train which backed in upon the siding just before the accident say it did not touch the car, and this testimony is substantially undisputed. The wind which it is claimed moved the car out is shown to have produced a pressure against the end of the car not exceeding 20 pounds, which would hardly be expected to move a car weighing seven tons on a grade such as this siding was shown to have been. This side track had been in constant use for at least 16 years, holds all kinds of cars, and no case of a car of any kind going out by force of the wind has ever been known at that station.

It also appears, by the testimony of competent and skillful engineers and mechanics and railroad men, that upon this siding there was no occasion for using stop-blocks; that their use was accompanied with inconvenience and danger; that good railroad management dispensed with them when not actually necessary, and that no necessity existed for their use upon this siding. There was no pretense but that all of the employés of the defendant were competent, skilled, and experienced men.

These are some of the facts which the testimony in the case tended to establish.

When the testimony was closed, counsel for the defendant submitted 21 requests to charge; 19 of which, it is alleged, the court refused to give, and to each of these refusals exceptions were taken.

The first request asked that the court direct the verdict for defendant. This was properly overruled, under the view the circuit judge took of the law, and there is no occasion to say more of this ruling.

The second is in substance the same as the first, except the pleadings are not included in the proposition, and needs no further consideration.

The third relates to the testimony on the subject of accord and satisfaction, and was ruled correctly. I do not think the

testimony tends to show that such a disposition of the plaintiff's claim was ever agreed upon or understood by the parties in what they did and said.

The fourth and fifth requests relate to the same subject, and I find no errors in what the court said about those.

The defendant's seventh request was given in substance by the court.

The defendant's ninth request, as modified by the court and given, is·as follows:

"It was not the legal duty of the defendant towards this plaintiff to provide its side track at the County Line station with stop-blocks, and its omission to do so was not actionable negligence."

The modification is as follows:

"Now, it is true, gentleman of the jury, that the law does not require a railway corporation to adopt any particular plan or devise. They were obliged, if you find that this track was in such condition that the flat car was liable to get out upon the main track, in the use of the track, to exercise ordinary care—such care as a prudent man in the management of his business would exercise—to prevent it. It is left to them to say *what* they should do, but the law requires them to do *something* in that regard. It may not require them to use a stop-block, if they could accomplish the same object by some other means,—by the employment of a watchman, or by blocking the car, or in some other way that would be sufficient,—but they are obliged to use *some* means to prevent it."

The defendant's counsel claim that they were entitled to have the request given without the modification. In this they were correct. There is no testimony in the case tending to show that the track was not in proper condition, or in such condition that, in the use made of it by the defendant, exercising ordinary care, a flat car standing upon the siding was in danger of coming out upon the main line. There is no testimony tending to show that ordinary care was not observed by the defendant in placing the car where it did upon its

siding, and which it had been accustomed to do, with an experience of safety, for more than 16 years.  And the claim that the car was liable to get out on the main line by reason of any peculiar construction or condition of the track was improperly left to the jury, for them to infer negligence on the part of the defendant, under the facts as they appear in this record.

Negligence, when relied upon, must be proved.  It may be inferred from facts proved, but never from mere conjecture.

The defendant's tenth request was refused.  It should have been given.  It is as follows:

"Even though the jury may believe that, if the side track at the County Line station had been provided with stop-blocks, the flat car would not have run out onto the main track so as to obstruct it, this would not entitle the plaintiff to recover."

It is not a question here whether the defendant made the best track for its siding, or used the best means and appliances in conducting its business.  *Railroad Co. v. Gildersleeve,* 33 Mich. 133; *Railroad Co. v. Bishop,* 50 Ga. 465.

The test of liability is not whether the company in this case omitted to do something it could have done, and which would have prevented the injury, but whether it did anything, or omitted to do anything, which under the circumstances, in the exercise of ordinary care and prudence, it ought to have done, and from which the injury to the plaintiff proceeded.  *Leonard v. Collins,* 70 N. Y. 90; *Railroad Co. v. Love,* 10 Ind. 554; Thomp. Neg. 982, 983, and cases cited.

I think the court erred in excluding the tenth request from his charge.  It was quite proper to be given in the case sought to be made under the testimony.

The eleventh request made was as follows:

"The defendant is under no legal obligation to maintain station agents at flag stations for the protection of its employés."

The court gave this request, and then said:

"This is true as an abstract proposition. But if they do not have a station agent at a flag station to look after the switches and lights, and the running of cars upon the side track, provided the side track is dangerous in its character, they must adopt some other means."

The request was right, but the statement of the circuit judge in connection with it is erroneous. Substantially, the jury was informed that the request had nothing to do with the case; that because of the correctness of the defendant's legal proposition contained in the request the company should have done something; and it again submitted to them the safety of the defendant's track to pass upon. This, as we have before said, should not have been done. All that the law required was that the defendant should construct and—

"Equip its side tracks and cars, and station its agents, in the manner usual with well-managed railroads, and as good railroading required."

*Railroad Co. v. Gildersleeve*, 33 Mich. 133; *McGinnis v. Bridge Co.*, 49 Id. 466; *Richards v. Rough*, 53 Id. 212; *Sjogren v. Hall*, Id. 274; *Batterson v. Railway Co.*, Id. 125; *Railroad Co. v. Lonergan*, 118 Ill. 41 (7 N. E. Rep. 55).

The defendant in this case, when it took the plaintiff into its employment, did not warrant the safety of its track, nor the sufficiency of its machinery and appliances, nor the competency of its other servants. It did not insure the plaintiff against the insufficiency of the one, or the incompetency of the other, and it owes no duty to the plaintiff beyond that of reasonable or ordinary care. See authorities before cited.

The defendant's twelfth request relates to the fact of whether or not the defendant had a station agent at County

Line station when the accident occurred, and was properly omitted.

The giving of the defendant's thirteenth request with the comment thereon was error, for the reasons given in considering the eleventh request.   The request is as follows :

" The defendant did not owe this plaintiff the legal duty to provide its flat cars which it left standing upon that side track with brakes; and, even if you should find from the evidence that the flat car had no brakes at the time of the injury, this does not establish the negligence alleged in that regard against the defendant, nor entitle the plaintiff to recover."

It states a clear proposition of law based upon the facts in the case, and should have been given without qualification.

The defendant's fourteenth request relates to its right to leave broken cars upon its side track in course of its regular business, and its liability in case of accident to a servant from that cause who had notice. 

There was no error in the refusal to give it.

There is, however, in the remarks of the court in relation to it, damaging error.   In these the court says:

" Is there any testimony in this case that shows that Mr. Hewitt knew of the grade of this track, or that he knew that cars upon it might pass out upon the main track by the wind, or by meddlesomeness of boys, or by trains backing in ?"

This contains a suggestion that this car might be or was taken out by the wind, or either assumes the fact it might have been done, which was not conceded in the case.   A suggestion or conjecture of this kind is often most mischievious in the trial of causes of this character before a jury, and ought not to be made.   Jurors are very apt in seizing upon such suggestions or conjectures, and acting under the feeling of sympathy, not unfrequently generated upon the trial, for the plaintiff in this class of cases, and making them controlling elements in their verdict.

The following is the defendant's fifteenth request, which was refused by the court, together with his reasons for such refusal:

"If the jury believe that motion was imparted to the flat car by the freight train, which is shown to have backed onto the side track that night, being hauled out, and that such motion was the cause of the flat car moving out onto the main track, such facts might establish negligence on the part of the men in charge of the freight train, but for such negligence the plaintiff cannot recover against this defendant."

The reasons for such refusal were as follows:

" That request I do not think the evidence warrants the court in charging the jury as correct in this case. The only party that was on the freight train that has testified in this case was a brakeman. You will remember his testimony. If I remember it right, he claims that he saw the flat car after his train had backed in on the switch at the end of the train, a half a length of a car from it, and not at any other point. Now, if it were true that that train caught on this car in going out, and that the parties knew it, and failed to block it and protect in any way, that would be negligence on their part,—negligence on the part of those who were operating the train,—and would be the negligence of a fellow-employé of the plaintiff, and the company would not be responsible for that. If it followed out on account of the character and construction of the side track, and was unknown to them, and they did not know in the darkness that it was following them, why, of course, they could not be held responsible for negligence in not knowing it."

I think the request states a very plain proposition of the law. It was entirely proper that it should have been given. It was part of the plaintiff's claim, or rather his theory, that the freight car got out in that way, and the jury found, in answer to one of the special requests, that the car came out by reason of motion imparted to it by the freight train which backed in on the side track the night of the accident. Really, the court had assumed, in what he said relating to the fourteenth request, that the car might have come out from such cause, and asked the question, did the plaintiff

know that fact, and further submitted the question of the car coming out by reason of the freight train backing in, as follows:

"Now, the first question of fact for you to consider is the construction of this side track. How was it constructed, and when was it constructed? Was it constructed in such a manner, and with such a grade, that a car standing upon that track was liable to go upon the main track by force of the wind that might occur there, or by the carelessness of boys, or *in the operation of a train backing into the switch?*"

The defendant's request should have been given without qualification.

The court declined to give the defendant's sixteenth request, which is as follows:

"A railroad company is not bound to change its manner of using its side tracks, nor to adopt the most approved ways or appliances in business. And if one of its servants, knowing, or having ample means of knowing from long-continued employment, the way and manner in which the side tracks are used, continues in the employment without complaint, and if from such way and manner is subjected to risks of accident, he is presumed to assume such risks, and, if injured thereby, cannot recover."

This request should have been given. It states the rule correctly. *Ladd v. Railroad Co.*, 119 Mass. 412; *Gibson v. Railway Co.*, 63 N. Y. 449; *Lovejoy v. Railroad Co.*, 125 Mass. 79; *De Forest v. Jewett*, 88 N. Y. 264; *Smith v. Railway Co.*, 33 Amer. Rep. 484; *Sullivan v. Manufacturing Co.*, 113 Mass. 396; *Fleming v. Railroad Co.*, 27 Minn. 111 (6 N. W. Rep. 448).

The seventeenth request is as follows:

"It appears from the uncontradicted testimony in this case, introduced by the plaintiff, that for a long time prior to April 10, 1883, it was the custom of defendant to use many of its side tracks, including this one at County Line station, without stop-blocks, and to leave cars standing thereon when not in use. If such custom was dangerous, and liable to result in such cars coming out upon the main track, and to cause collisions, such danger and liability were as well

known to plaintiff as to any of the officers of defendant; and the plaintiff having continued in the employment of the defendant without complaint, is presumed to have voluntarily assumed the risks of accident from such cause."

In place of the last two requests, the court said to the jury:

"I might say here, gentlemen of the jury, that the plaintiff must be held as knowing all that has been testified to in this case; that he knew with regard to the operations of the defendant with regard to this track, and the management of the station, and also what he would learn or observe as an experienced engineer in running over the road, and such observation as he could have made of this side track in operating an engine on the main track, or in going in upon the side track himself, if he did go in."

The charge given leaves out what the plaintiff was presumed to know, and what it was his duty to know, and was erroneous for that reason. The charge requested in both the last numbered requests ought to have been given. They were both fully supported by the decisions of this Court. *Railroad Co. v. Leahey,* 10 Mich. 193; *Davis v. Railroad Co.,* 20 Id. 105; *Hathaway v. Railroad Co.,* 51 Id. 253; *Railroad Co. v. Austin,* 40 Id. 247; *Piquegno v. Railway Co.,* 52 Id. 40; *Richards v. Rough,* 53 Id. 212; *McGinnis v. Bridge Co.,* 49 Id. 466; *Lyon v. Railroad Co.,* 31 Id. 429; and other Michigan cases hereinbefore cited.

The court should have given the defendant's eighteenth request.[1] It was refused. It stated only an elementary rule upon the subject to which it relates, and was warranted by testimony in the case.

I think no error was committed in refusing the twentieth

---

[1] "18. If the plaintiff knew, or had such means of knowledge that it can reasonably be said that he ought to have known, of the hazards of the work upon which he was engaged, as the business was conducted, and yet continued in the employment without complaint, and was injured while so engaged, he cannot maintain an action against the defendant therefor, although there was a safer way of conducting the business, which, if adopted, might have prevented the injury."

request;[1] and the subject of the twenty-first,[2] as I have hereinbefore said, it is unnecessary to consider.

This disposes of exceptions to the refusals to charge.

Inasmuch as a new trial must be had in the case, it is unnecessary to determine whether or not the court's charge upon his own motion was correct in those parts excepted to in the defendant's forty-sixth, forty-seventh, forty-eighth, and forty-ninth assignments of error, for, if erroneous, the errors will not be likely to recur on a new trial.

I find no error under the forty-ninth[3] or fiftieth[4] assignments of error.

The charges referred to in the fifty-first and in the fifty-

[1] "20. If the jury shall be in doubt whether the car was caused to be upon the main track by the malicious act of a person or persons, or how otherwise, the plaintiff cannot recover."

[2] "21. The plaintiff, being in charge of the train, being of large experience on this and other railroads, being familiar with the situation at County Line station, having been running by it almost daily for several years, and being instructed by the rules of the company to use care and caution, and in cases of doubt to take the safe side, was alone responsible for the rate of speed of his train at the time of the collision ; and if the jury find that had he approached the station at a less rate of speed, and been as watchful as was his duty, the injury could have been avoided, he cannot recover."

[3] "49. The circuit judge erred in charging the jury as to the observance of the rules by the plaintiff, and his reference to rule 84, and his statement of what the evidence showed as to switch-lights, and that the testimony showed the switch-lights were in place as the plaintiff with his train was approaching, and indicated no danger, as stated in the bill of exceptions, as follows: 'These rules that were read to you the plaintiff, in the management of his train, was bound to observe. In reading rule number 84, the evidence in this case is that, as he reached the station, it is undisputed the lights upon the main track (the switch-lights) were in place and indicated no danger.'"

[4] "50. The circuit judge erred in charging the jury as to the duty of the defendant to provide a safe road for the plaintiff, and to provide against danger in the operation of its side tracks, and in the instruction that it was he duty of the defendant to provide its side track in such manner as an ordinarily prudent person would provide it for the safety of his employés, as stated in the bill of exceptions, as follows: 'In this case it was the duty of the defendant to provide its road in a reasonably safe condition for the plaintiff's use in working for the defendant as an engineer, in running passenger trains over the road by day and night, at the rate of speed which the plaintiff by his employment was required to run. It was also the duty of the defendant to provide against such dangers to the safety of the use of its main road, in the operation of its side tracks connected therewith, as a reasonable man, acting with ordinary prudence in that business, would provide against.'"

second assignments have been sufficiently considered.  I may say, however, it was the duty of the engineer to know the duties of a station agent along the line of the road he was running upon, so far as they related to the proper discharge of the engineer's duty, and any instruction to the contrary would be erroneous.

The sixty-second assignment of error contains one subject requiring further notice.  The circuit judge charged, in speaking of the carelessness of the fellow-servants who backed a freight train in upon the side track just before the collision occurred, that if the flat car—

"Followed out on account of the character and construction of the side track, and was unknown to them, and they did not know in the darkness that it was following them, why, of course, they could not be held responsible for negligence in not knowing it."

If by this it was intended to convey, as I suppose it was, the idea that the servants on the freight train were not negligent in not making the car secure if they did not know it was following them, then the instruction was error.  Negligence in a servant may consist, and often does, in failing to know as well as in failing to do.  And such is always the case where it is the duty of the servant to inform himself and to know, and, under the facts stated, such would have been the duty of the servants upon the freight train.

I see no occasion to say anything further in relation to the charge as given upon the court's own motion, or as to the requests to charge.

I do not think it was proper to allow the jury to take to their jury-room such of the defendant's requests as were marked by the court "Given."  The jury must receive the law and the testimony in open court;  and I know of no practice which will allow these, or any part thereof, or any papers used in the case, to be taken to the jury-room, against the consent of the parties, or either of them, except it may be items of an account.

I do not consider the assignment that the verdict is excessive. , There is no occasion to pass upon that question on this record.

Twenty-six exceptions are relied upon to the rulings of the court in taking the testimony.

The sixth assignment relates to the introduction by plaintiff of rule 25 of defendants's time-card in force when the plaintiff received his injury, and which relates exclusively to the duty of station agents. The objection was well taken, and the testimony was erroneously admitted. The proof was, so far as the testimony tended to show anything upon the subject, that there was no such agent at County Line station.

The following question was propounded to the plaintiff when he was being examined as a witness for himself by his counsel:

" Recalling your attention to the side track there, and supposing it to have the descent which is represented by the plat put in evidence, in case an easy running flat car was given motion towards the south end, at a point where it was on a descending grade, how far, in your opinion, would that car run, if left to run without any obstruction, towards the north?"

The objection was incompetency and immateriality, and it should have been sustained. The question is too indefinite to be material, or to admit of any satisfactory answer.

. There is but one other exception needing attention. I find no error in the remaining assignments relating to taking the testimony.

When the plaintiff was upon the stand, his counsel asked him the following questions:

"1. Have you a family?

"2. Do you reside with your family at home?"

The objection to these questions was immateriality. The witness answered, "Yes, sir," to each question. It is claimed by plaintiff's counsel that these questions were not

asked for the purpose of exciting, nor did they tend to excite, sympathy, but were asked for the purpose of showing what manner of man the plaintiff was, in order to give him credit and character before the jury as a witness, and show that he was "a settled, stable citizen;" that he was a man of character, and known in the community.

The testimony was immaterial, but not sufficient to produce any prejudicial error, and the judgment could not be reversed therefor.

The other assignments of error are not passed upon, but for those discussed the judgment must be reversed, and a new trial granted.

CAMPBELL, C. J., and CHAMPLIN, J., concurred.

MORSE, J. In this case, while I agree in the reversal of the judgment for errors pointed out in the opinion of Mr. Justice SHERWOOD, which errors it is not necessary for me here to particularize, I cannot assent to all the propositions laid down by him in such opinion. I shall state briefly some of the points in which I cannot concur.

In relation to the dangerous character of the side track, in my opinion, it was competent for the jury to determine whether or not, under all the circumstances, stop-blocks were necessary to guard against just such accidents as this, and, if such blocks were necessary, it was the duty of the defendant to use them, or some other equivalent means, to prevent the running of the cars, by the wind or their own motion when once started, out upon the main track.

Neither the circuit court nor any other court, under the evidence, was authorized to find, as a matter of law, that the plaintiff was bound to know of the defects in the construction of this side track.

The jury found, in substance, in answer to special questions, that the accident was occasioned by two joint causes, to wit: The motion imparted to the car by the special freight

67 MICH.—6.

train which backed upon the side track the night of the accident, and the force of the wind then prevailing. In my opinion there was sufficient evidence to warrant a jury coming to this conclusion. Whether or not the fellow-employés of the plaintiff who were running the special freight train were negligent in not knowing that they had imparted such motion to this car was a question of fact for the jury. We cannot say, as a matter of law, that they were bound to know it, and consequently guilty of negligence.

The ninth request of the defendant was properly modified by the trial court.

The tenth was correctly refused.

The eleventh was modified as it should have been. It certainly cannot be the law that, because the company is not obliged to maintain station agents at flag stations, it can leave side tracks connected by switches with the main track, and of a defective construction, subject to all manner of interference and accidents, without any one to look after or care for such switches, and with no precaution whatever against accidents which are liable to take place and destroy human life.

No harm to the defendant could have resulted from the allowance in evidence of the fact that plaintiff had a family, and resided with them. Though immaterial and irrelevant to the issue, the fact would have been known by the jury, without doubt, had the question not been allowed. I know of no rule that would have prevented the plaintiff attending court during the trial surrounded by his family had he chosen to do so; and I know of no means that could have been taken in such case to have prevented the jury from ascertaining that he had his family with him in court. Such questions as these complained of are ordinarily asked, and are not ordinarily supposed to have such a controlling influence over a jury as to vitiate their verdict.