Bradbury, J.
One of the grounds assigned for a new trial, in the motion made in the court of common pleas to set aside the verdict of the jury, was that the verdict was not sustained by sufficient evidence; that contention is urged in this court, and if sound, will dispose of the case and render a consideration of the other errors assigned, unnecessary.
While this court will not undertake to determine the weight of the evidence in cases where there is testimony pro and con respecting material facts in issue at the trial, yet, where the evidence, whether disputed or admitted to be true, does not create an inference of the existence of a fact essential to support the judgment rendered, it will be deemed by this court to be a sufficient ground fox its reversal. In the case at bar, plaintiff in error contends that the evidence of the plaintiff below, failed to show any negligence or failure of duty on its part. This makes it necessary to ascertain what negligence or violation of duty was charged against it, and to consider the proof which was introduced to establish it.
The plaintiff below, after setting forth in his petition that he was in ihe employment of Thé Pittsburgh & Lake Erie Railroad Co. (defendant below) as brakeman, from August 12,1889, to the 12th day of October following, in the night of which day he received the injury complained of, averred that he received it under the circumstances following:
“ That on the 12th day of October, 1889, at or near the hour of midnight of said day, while plaintiff was so employed as a brakeman on the line of defendant’s railroad at Chartiers, while in the performance of his duties as a brakeman, and in the making up of a train of freight and coke cars at Char-tiers, and while connecting or coupling two coke cars of said defendant company, he was injured by having his left hand crushed and mutilated so that his thumb and his two fingers, next to the thumb of his left hand, were completely severed, and the use of his left hand thereby permanently destroyed.
“ That the said railroad company, before and during plaintiff’s said employment as a brakeman, had adopted and had in general use, upon its freight and coke cars upon said line *610 of railroad, a coupling link, two coupling pins, and what are known as standard drawheads to make connections or couplings between the cars composing their freight and coke trains.
“ That said standard drawheads were constructed of a uniform size and pattern, and were so constructed that when two of said drawheads would come together in the coupling of cars, they would touch each other at the tops and bottoms, and were concaved or hollowed out between the tops and bottoms that came in contact with each other, so as to leave a large space between them for the purpose of affording the brakeman, whose duty it became to insert the link between the drawheads, a safe and proper method of performing said duty; that the links used in said standard drawheads were of a uniform size,'and were so made as to easily enter the drawhead the}r were used in connection with.
“ Plaintiff further says, that the defendant company carelessly and negligently furnished one of the two cars which he was attempting to couple at the time when he received his said injury, with a defective, dangerous and insufficient drawhead, and of a different pattern and shape than those known as standard drawheads, then in general use on said company’s line of'railroad.
“ That said drawhead, so negligently furnished by defendant company, was of such size and form that it would not meet the standard drawhead so as to leave sufficient space for the brakeman’s hand in making a coupling.
“ That said drawhead was defective, dangerous and insufficient, and defendant was negligent in furnishing the same as aforesaid; also for the reason that the hole in the end of the same was insufficient in width to admit the coupling link used by said company on its cars in connection with their standard drawheads.
“ That in the performance of his duties of coupling said two cars, and in the attempt to insert the link of the standard drawhead on one of said cars into the defective, dangerous and insufficient drawhead of the other car, so negligently furnished by defendant company, the link was jammed and forced against said defective drawhead and could not enter *611 said drawhead because of its narrow opening, and by reason of the insufficient opening in said drawhead, said link was suddenly forced against the plaintiff’s left hand by the train of cars that was moving, in such a manner that it was caught, firmly held and crushed between the said link and said defective drawhead.
“ That by reason of the negligence of the defendant in furnishing, as aforesaid, the defective, dangerous and insufficient drawhead for coupling the said cars the plaintiff was injured, as hereinbefore stated.”
These averments of the petition were denied by the answer.
The petition, it will be observed, charges that the plaintiff in error furnished one of the two cars that he was coupling with a drawhead different in pattern from that in general use on its road, and with which the other car was provided; that said drawhead was defective, dangerous and insufficient, and that, plaintiff in error was negligent in furnishing tire same; also that the hole in its end was not sufficient in width to admit the coupling link used by the railroad company in connection with the drawheads in general use on its cars. These averments being denied by the answer, must be proven. There is no material, if any, conflict in the evidence respecting these matters. The drawhead on one of the cars being coupled, was known as “standard drawheads ; ” their ends were concave ; the end of the other was square ; the hole in the end of the former to admit the coupling-link was larger than the hole in the end of the latter. There was no evidence tending to show that either drawhead was an imperfect one of its kind, or in any way out of repair, and in the absence of such evidence, and without considering that of the car inspectors, or others, tending to show that both were in good repair, we cannot infer that either drawhead was a bad or defective one of its species; nor was any evidence produced to show that the railroad company had not within easy reach, coupling links adapted to coupling cars having drawheads of different kinds, such as the cars had which defendant in error was coupling when injured. The averments, therefore, that the drawhead of *612 either car was defective, or that proper coupling links were not provided by the plaintiff in error, are not established by the evidence. It clearly appears, however, that the draw-heads attached to the two cars defendant in error was coupling, were unlike, one being known as the “ standard ” drawhead, the other the “saw-mill run” drawhead. The evidence fairly establishes that coupling cars using the “ saw-mill run ” drawhead is more hazardous than it is to couple those equipped with the “standard ” drawhead, and that to couple a car provided with one of these two drawheads with another car using the other kind, is still more hazardous, and therefore the question is fairly presented, whether the plaintiff in error was negligent in equipping its cars with drawheads of different patterns as it did in this instance.
Was the plaintiff in error bound to provide couplings for its cars of uniform pattern and of the safest character? or may it adopt and use couplings of different types, though the hazard of coupling cars may be increased thereby? This question has not heretofore been considered by this court, though it has frequently come before other courts of last resort, and has been discussed in the text books.
It is generally held that a railroad company is not bound to provide the best or most approved appliances but may use such as are reasonably fit for the purpose, or that may be in general use on well managed railroads. 2 Thompson on Neg., 989, note 6; Patterson’s Railway Accident Law, 301; Railway Co. v. Gildersleeve, 33 Mich. 133; Whitman v. Railway Co., 58 Wis. 408.
To require that railroad companies shall provide uniform couplings on all their cars, would cripple every effort looking towards improvement. No change could be made, no new appliance tested, and its utility determined, without incurring a liability no prudent company would care to assume. The occupation of one whose duty is to couple cars, is at best highly hazardous, and it accords with a sound and enlightened public policy to encourage such attempts as may be made to introduce devices designed to diminish this danger. But, were that not so, it, nevertheless, would be of *613 little or no practical benefit to one engaged in coupling cars, to require a railroad company to have all its couplings uniform, so long as the exigencies of commerce require that cars of other railroads shall be transported over it, with couplings as varied as human ingenuity, and the taste and judgment of the managers of the railroads of the country may choose to make them. We therefore hold that the fact that the drawheads of the two cars that the defendant in error was coupling at the time he was- injured, were of a different pattern ; that one was somewhat smaller than the other, and required a smaller coupling link, in the absence of proof that suitable links were not provided, was not negligence. The plaintiff in error had a lawful right to adopt one device without discarding all others differing from it; that this right might be exercised was a risk incidental to the duties in which defendant in error was engaged, and was assumed by him in entering upon the performance of them.

Judgment reversed.