KANSAS CITY, FT. S. & M. R. CO. et al. *v.* KIRKSEY.

(Circuit Court of Appeals, Sixth Circuit. March 6, 1894.)

No. 137.

1. MASTER AND SERVANT—NEGLIGENCE—QUESTION FOR JURY.

A switchman riding on the front of a switch engine was killed by the derailing thereof, which was caused by sand washing down from a pile near the track, and becoming embedded between the rails. The accident occurred about 6 o'clock in the morning, and there had been a heavy rain an hour or two before. The track had been examined at 12 the preceding night. Just before the accident, a wall, undermined by the rain, had fallen upon a passenger train, and at the time the section boss and his men were engaged in rescuing the dead and injured. *Held,* that it could not be said, as matter of law, that the company was guilty of negligence in not sending somebody to examine the track after the rain, and the question was one for the jury.

2. SAME—CONTRIBUTORY NEGLIGENCE.

 An intimation of the danger was signaled by another switchman to deceased, as he stood on the front of the approaching engine, but apparently he did not see it; and there was some evidence that the sand was over the rails. *Held,* that as it was the duty of deceased to watch for signals, and observe obstructions, is was not apparent, as matter of law, that he was not guilty of contributory negligence, and this question, too, was one for the jury.

3. SAME—EVIDENCE—FLAGMAN AT STREET CROSSING.

 Ordinances requiring railroad companies to keep flagmen at street crossings are not intended for the protection of the company's employés; and therefore, in an action for negligently causing the death of a switchman riding on a switch engine, which was derailed by an obstruction at a crossing where no flagman was stationed, it is error to admit such an ordinance in evidence.

In Error to the Circuit Court of the United States for the Western. Division of the Western District of Tennessee.

This was an action by Rosina Kirksey against Kansas City, Ft. Scott & Memphis Railroad Company and Newport News & Mississippi Valley Railroad Company for damages for the death of her husband. The circuit court directed a verdict for plaintiff, and defendants bring error.

Holmes Cummins, E. F. Adams, C. H. Trimble, and Wallace Pratt, for plaintiffs in error.

G. P. M. Turner and John R. Flippen, for defendant in error.

Before TAFT and LURTON, Circuit Judges, and RICKS, District Judge.

TAFT, Circuit Judge.   This is a proceeding in error, brought by the Kansas City, Ft. Scott & Memphis Railroad Company, hereafter to be referred to as the Kansas City Company, and the Newport News & Mississippi Valley Company, hereafter to be referred to as the Newport News Company, to reverse a judgment against both companies in favor of Rosina Kirksey for damages for the death of her husband, occurring, as she alleged, by the wrongful act of the two companies.

The court below held that by the undisputed facts in the case it was conclusively shown that both companies were guilty of negligence, and the deceased was not guilty of contributory negligence, and therefore directed a verdict for plaintiff, leaving to the jury only the question of damages. The main controversy arises over the action of the court in thus withdrawing the questions of negligence and contributory negligence from the jury.

The facts of the case as developed by the evidence were as follows: Between the city of Memphis and the Mississippi river the parallel tracks of three different companies run north and south, crossing at right angles the streets of the city which extend to the river. The west track is that of the Kansas City Company, the middle track is that of the Belt Line Company, and the east track is that of the Newport News Company. A little to the north of Jefferson street, which is one of the streets crossed by these three tracks, there is a spur or switch track, called the "Little Rock Switch,"

which, after connecting with the Newport News track, runs up a grade, forming an embankment, immediately to the right of the Newport News track, about three or four feet high. Archibald Kirksey, the deceased, was a switchman upon the yard switch engine of the Kansas City Company. Between half past 5 and 6 o'clock on the morning of the 8th of July this switch engine drew out a half dozen freight cars from the Newport News freight station, to switch them to another part of the railway yard. Kirksey's place was on the front footboard of the engine. His place is described as that of "following" the engine. His station was on the right-hand side, where the engineer could see his signals. His duty was to throw switches necessary for the shifting of trains, and to observe all obstructions upon the track, and signal to the engineer of their presence. The train passed over from the Kansas City track to the Newport News track, as, by arrangement between the companies, it had the right to do, and was in the habit of doing. It was broad daylight, but was raining some. There had been a moderate fall of rain the night before, and a particularly heavy fall somewhere between 4 and 5 o'clock. As the engine crossed two or three of the streets, before reaching Jefferson street, it had to run through water and debris, which concealed the track. Upon approaching Jefferson street an engine was seen standing still at the crossing on or near the Belt Line track. It had, in fact, been derailed, just as the Kansas City engine was soon to be. A switchman upon the Belt Line engine motioned to those upon the Kansas City engine, and pointed to the Jefferson street crossing of the Newport News track. No attention was paid to this by any one on the latter engine. In running over the Jefferson street crossing, the engine was derailed and ran into the Little Rock switch embankment, already referred to. Kirksey, who sat upon the front footboard of the engine, was crushed between the embankment and the steam chest of the engine, and was instantly killed. A pile of sand had been left upon the ground just east of the Newport News track and in the corner made by that track and Jefferson street, and the heavy rain had swept the sand down in between the rails of the track, so as to leave nothing but the tops of the rails visible. The action of the water was such as to harden the sand between the rails so that it lifted the flanges of the engine wheels from the rails, and threw the engine off the track. The section boss of the Newport News Company, whose duty it was in person or by subordinates to examine the track, and keep it clear from obstructions, had been over this crossing at 12 o'clock the night before, in company with a subordinate called a "track walker," and found the track unobstructed. About 4 o'clock that morning a train of cars had safely passed over Jefferson street on the same track, and the engine returning, without cars, some 20 minutes later, found no difficulty in recrossing. The heavy fall of rain already mentioned occurred shortly after. The result of this heavy rain was to undermine a large wall, which stood in the passenger station of the Newport News Company, and to throw it down upon a passenger train standing near. Many of the passengers were buried in the debris,

and several were killed. The section boss and all his force were at once summoned to save the living and disentomb the dead, and they were busily engaged in this work at the time of the derailing of Kirksey's engine. The engine was running at a speed not exceeding 5 or 6 miles an hour at the time of the derailment, and it could have been stopped within 10 or 15 feet, had Kirksey signaled to the engineer to do so, or had the engineer himself observed any obstruction upon the track. The place, where the pile of sand was, belonged to the city of Memphis. The sand had been there a month, having been placed there without the agency or authority of the railway companies. Slight quantities of sand were upon the track at 12 o'clock, when the section boss passed Jefferson street, and had been there before, but they had never caused any injury or inconvenience. The size of the sand pile is nowhere disclosed in the record.

On this state of facts, we are of the opinion that the learned judge in the court below erred in taking the questions of negligence and contributory negligence away from the jury. It is the rule in the federal courts that the court may withdraw a case from the jury altogether, and direct a verdict for the plaintiff or defendant, as the one or the other may be proper, where the evidence is undisputed, or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside the verdict in opposition to it. Railroad Co. v. Converse, 139 U. S. 469–472, 11 Sup. Ct. 569; Schofield v. Railroad Co., 114 U. S. 615–618, 5 Sup. Ct. 1125; Randall v. Railroad Co., 109 U. S. 478–482, 3 Sup. Ct. 322. But it often happens that, though the facts of a case are undisputed, the inference from those facts as to negligence or the absence of it on the part of him whose conduct is in question is an inference of fact to be drawn by the jury. This is the case where the presence or absence of negligence is not so clear but that reasonable men, viewing the same facts, may differ in regard to it. Said Mr. Justice Brewer in Railroad Co. v. Powers, 149 U. S. 43–45, 13 Sup. Ct. 748:

"It is well settled that, where there is uncertainty as to the existence of either negligence or contributory negligence, the question is not one of law, but of fact, and to be settled by the jury; and this, whether the uncertainty arises from a conflict in the testimony, or because, the facts being undisputed, fair-minded men will draw different conclusions from them. Railroad Co. v. Stout, 17 Wall. 657; Railroad Co. v. McDade, 135 U. S. 554, 10 Sup. Ct. 1044; Railroad Co. v. Converse, 139 U. S. 469, 11 Sup. Ct. 569."

The function of a court with respect to the issue of negligence or no negligence is to decide whether the facts are such that the jury may legitimately reach a conclusion either that there was negligence or that there was no negligence. The function of the jury, after the court has held that either inference is open to them, is to decide whether or not in fact there was negligence. Randall v. Railroad Co., 109 U. S. 478, 3 Sup. Ct. 322; Railway Co. v. Jackson, 3 App. Cas. 193. If the conduct of the defendants is not at once condemned as negligence or carelessness by the general knowledge and experience of men, the question is always one for the jury. Gaynor

*v.* Railroad Co., 100 Mass. 208–212. The result is, therefore, that unless we conclude that no fair-minded man or jury could legiti· mately infer from the facts of this case either that the railroad company was not guilty of negligence resulting in Kirksey's death, or that Kirksey was guilty of negligence contributing to his death, the judgment must be reversed. The duty of the railroad company to an employé running upon its trains with respect to its tracks is well settled. The company is not an insurer of the safety of its track, but it must use reasonable care—the care which a prudent man would exercise under the same circumstances—to keep its track free from obstructions and defect. Hewitt v. Railroad Co., 67 Mich. 61, 34 N. W. 659; Railroad Co. v. McDade, 135 U. S. 554–570, 10 Sup. Ct. 1044.

The question of negligence on the facts is one of degree. How often did reasonable prudence require the railroad company to send a man over its tracks in its railroad yard to see that there was no obstruction upon them. The intervals between the examination of the track might be so short on the one hand or so long upon the other that the court could say as a matter of law that in the one case there was no negligence and in the other that there was negligence. But we do not think this to be such an extreme case. An examination had been made at 12 o'clock the night before. The accident occurred about 6 in the morning. Certainly a court could not charge as a matter of law that under ordinary circumstances it was negligence on the part of the company not to send a track walker between midnight and morning over every foot of the several miles of the company's yard track. But it is said that the peculiar circumstances here remove all doubt of negligence. Those circumstances are the presence of the sand pile near enough, the track at Jefferson street to make obstruction possible, and the heavy fall of rain shortly after 4 o'clock in the morning. It is a fair inference that but for the heavy fall of rain there would have been no derailment of the engine, because, as already stated, a loaded train and a light engine did pass over the crossing after 4 o'clock, and before the heavy rain, without any accident. The learned judge of the court below was of the opinion that the very fact of the heavy fall of rain ought to have induced the section boss of the company in charge of the track to send some one out to observe whether the sand had not obstructed the track. Just at that time the section boss and his entire staff of subordinates were called by the emergency growing out of the same fall of rain to rescue human life at another part of the railway yard. In such an emergency the jury might properly infer that it was not negligence for the section boss to act upon the belief that there was more need to call all the men available to the place of known death and injury than to send them to remove obstructions upon the track for switch engines. The accident to Kirksey was a peculiar one, and one not very likely to happen. Under ordinary circumstances, a switch engine running in broad daylight at only five miles an hour might be easily stopped before injury could result from any obstruction upon the track which would be likely to derail it. It is not

for us to say what conclusion the jury should have reached. It is enough for us to say that they might with reason have concluded from the facts that the section boss and his subordinates used the care of ordinarily prudent men under the circumstances, and that the failure to remove the sand was not negligence. It follows that it was error for the court to take the question from the jury.

We are of the same opinion as to the issue of contributory negligence. It was the duty of Kirksey to observe all obstructions upon the track, and to call the engineer's attention to the same. There was ample time, had the engineer been signaled by Kirksey after he could see the crossing, to stop before the point was reached at which the engine was derailed. He was signaled to by the switchman of the Belt Line road, and his attention called to something unusual at the crossing. The switchman thinks that Kirksey did not see this signal. It was his business to look out for signals of any kind, and for obstructions. It may be that the sand was so packed between the rails as not to indicate any obstruction. There was, however, some evidence that it was several inches over the rails. We think it was fairly a question for the jury to say whether or not Kirksey was wanting in reasonable alertness and attention in failing to see or understand the signal of the Belt Line switchman, or in failing to observe this obstruction, and in not signaling its presence to the engineer. It was an error, therefore, to take this issue from the jury.

Another error assigned is that the court allowed to be read in evidence, the following ordinance of the city of Memphis:

"All railroads whose trains or cars are drawn by steam engines within the limits of this district, shall provide flagmen for each street such trains may cross; and these flagmen shall keep constantly on duty at each street when such trains cross, and until the engine has crossed such street, waiving a flag in day time and a red lighted lamp at night to give warning to all of the approaching trains, and the engineer on each of such trains shall keep the bell constantly ringing while his train is passing through the district; and any and all persons or railroad companies offending against this ordinance shall be fined," etc.

There was no flagman at Jefferson street when the accident occurred, and the ordinance was relied upon as the basis for argument that, if the company had had a flagman there, he would have signaled the train to stop, and the accident would not have occurred; wherefore it was said that the failure of the Newport News Company to obey the ordinance was a violation of its duty causing the accident. Manifestly the ordinance was passed to save the public traveling along the streets from injury by passing trains, and was not enacted at all for the purpose of protecting the employés of companies engaged upon its trains. The presence or absence of the flagman at this crossing had nothing to do, therefore, with the operation of the trains, except to keep the public out of the way of them. The absence of the flagman may have been a failure of duty by the railroad company to the traveling public, but it was not a failure of duty to any of its employés. We think that the ordinance was improperly admitted, and was prejudicial to the defendants below.

Another assignment of error is based on the court's refusal to direct a verdict for the Kansas City Company, because this accident occurred on the Newport News Company's track, and there was no evidence to show that the crew in charge of the switch engine and train had any orders or authority from the Kansas City Company to use any track but its own. The evidence is not as clear as it ought to be in regard to the arrangement by which the Kansas City engine was on the Newport News track, but, as the case must be tried again, and this will probably be brought out more clearly, we express no opinion on the question raised.

There were other assignments of error which we do not think it necessary to consider. The judgment of the court below is reversed, and a new trial ordered, the costs in this court to abide the event.