STATE OF MISSOURI, TO THE USE OF DOROTHEA WOLF, Respondent, *v.* HENRY B. BERNING, Appellant.

### May 28, 1878.

1. Where an executor pledges notes belonging to the estate for his private purposes, in consequence of which they are lost to the estate, the sureties on the bond existing at the date of the conversion of the notes are liable, though the executor may have subsequently given an additional bond carrying down the balance due the estate so as to make the sureties on the latter bond also liable.

2. An application by a distributee for partial distribution is no admission on the part of the distributee that the executor had then no greater amount in his hands subject to distribution; nor does this application, and the order of the Probate Court made in pursuance thereof, estop the distributee to assert that the executor had then other funds.

3. Where waste is committed under circumstances which give a right of action upon the first bond of an executor, and also upon his additional bond, the record of a judgment on the second bond is not competent in an action on the first, as tending to show an admission on the part of plaintiff in both suits that the dereliction of the executor occurred wholly during the existence of the second bond.

4. Where waste is committed by the conversion of notes, in the absence of testimony that the notes were not worth their face, the measure of damages in an action against the sureties upon the executor's bond is the face value of the notes, though the executor was allowed full commissions on final settlement.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

A. J. P. GARESCHÉ, for appellant: The executor had no authority of law to assign the notes of the estate except to creditors, legatees, or distributees, to the extent of their claims against the estate. — Wag. Stats. 89, sect. 40 ; *Prosser* v. *Leatherman*, 4 How. (Miss.) 240. And the executor, because the contract was an illegal one, in his suit against the bank would not have been estopped to recover. — Herman on Estop. 246 ; *Magee* v. *Gregg*, 11 Smed. & M. 77 ; Big. on Estop. (2d ed.) 255 ; *Young* v. *Bushnell*, 5 Bosw. 14 ; *Stagg* v. *Linnenfelser*, 59 Mo. 344 ; *Railroad Co.* v. *Schuyler*, 38 Barb. 563 ; *Day* v. *Green*, 4 Cush. 439 ; *Pierrepont* v. *Barnard*, 5 Barb. 375 ; *Woods* v. *Kirk*, 28 N. H. 329 ; *Thomas* v. *Bowman*, 29 Ill. 429. The executor cannot be held liable beyond the last sum in his hands during the second bond. — *Enicks* v. *Powell*, 2 Strobh. 200. Sureties cannot prove error in amount. — *The State* v. *Holt*, 27 Mo. 343 ; *Taylor* v. *Hunt*, 34 Mo. 208. And cannot impeach the heirship of distributees. — *Lamkin* v. *Heyer*, 19 Ala. 232. The sureties on the second bond are liable. — *Pinkstaff* v. *The People*, 59 Ill. 151 ; *Rogers* v. *Fort*, 19 Ga. 96 ; *Hargroves* v. *Batty*, 19 Ga. 132. The court erred in the exclusion of the

record of the recovery by the *cestui que use*, of the same debt against the surety on the second bond. — *Haskell* v. *Farrar*, 56 Mo. 498.

KEHR & TITTMAN and J. M. & C. H. KRUM, for respondent: For the conversion evidenced by the executor's transaction with the bank the appellant is liable, as the misconduct of the principal happened prior to the giving of the new bond. — Wag. Stats. 76, sect. 286 ; *The State to use* v. *Drury*, 36 Mo. 286 ; *Smith* v. *Paul's Executor*, 21 Mo. 51. The pledge of the notes by the executor did work a conversion of such notes. — 36 Mo. 286 ; *Wilson* v. *Doster*, 7 Ired. 231. In pledging the notes for his own debt the executor made an improper and unauthorized use of them, by means of which they were lost to the estate. His unauthorized and unlawful act cannot be interposed now to shield him or his surety from liability. — *The State to use* v. *Scholl*, 47 Mo. 84 ; *Upchurch* v. *Norsworthy*, 15 Ala. 707 ; *Pistole* v. *Sheet, Admr.*, 5 Port. 70 ; *Taylor* v. *Chester*, L. R. 4 Q. B. 309. The surety and the principal stand in the same position. The executor could not deny, as between the bank and himself, that he had the right to dispose of the notes. The appellant is in no better position. — *Taylor* v. *Zepp*, 14 Mo. 482 ; *Newman* v. *Hook*, 37 Mo. 207 ; *Chouteau* v. *Goddin*, 39 Mo. 229 ; *Camp* v. *Byrne*, 41 Mo. 525 ; *Grant* v. *White*, 42 Mo. 285 ; *Tamho* v. *Gantt*, 12 Ala. 298 ; *Bragg* v. *Massie*, 38 Ala. 89 ; *Quick* v. *Staines*, 1 Bos. & Pul. 293. The measure of damages was correctly announced by the court below. No evidence was offered to rebut the presumption that the notes were worth their full face value and interest. — *Flagg* v. *Mann*, 3 Sumn. 84 ; *Braddon* v. *Mutual Savings*, 28 Mo. 187 ; *Menkens* v. *Menkens*, 23 Mo. 252.

BAKEWELL, J., delivered the opinion of the court.

This is an action by the widow and residuary legatee of Louis Wolf against one of the sureties on the executor's bond. The breach assigned is that, during the period cov-

ered by the bond sued on, which was the first bond given by the executor, he converted to his own use the assets of the estate, and that by reason of this conversion he owes to plaintiff the sum of $30,614.74, which, on final settlement, he was ordered to pay to Mrs. Wolf as residuary legatee, and which remains wholly unpaid. There was a trial before the court without a jury, and there was judgment for the penalty of the bond, with an order that execution issue for $23,092.22, the amount found to be due, and costs. A motion for new trial and in arrest were overruled, and defendant appeals.

It appears from the pleadings and evidence in the case that Staehlin, as executor of Wolf, gave bond in July, 1872, with defendant and others as sureties; afterwards, in September, 1873, at the instance of Mrs. Wolf and by order of the Probate Court, Staehlin gave an additional bond. Defendant is not one of the sureties on the second bond. In January, 1875, Staehlin made final settlement, showing $30,806.09 due the estate in cash, besides notes and stock, and was ordered to transfer the notes and stock to Mrs. Wolf, and to pay to her, of the cash shown to be due the estate, $30,614.74. This order has not been complied with.

In October, 1872, Staehlin, who was in the brewing business, was embarrassed. The cashier of the Central Bank knew the fact. On October 3, 1872, Staehlin negotiated at the Central Bank his own note for $12,000, the proceeds of which were paid to him by a cashier's check of the Central Bank to his order as executor of the estate of Wolf, and were by Staehlin deposited to his private account in the Central Bank and used by him in his private business. He kept no separate bank account for the funds of the estate. As collateral security for this note, Staehlin, at the time he obtained the discount, deposited with the bank four notes belonging to the Wolf estate, all made to the order of Wolf during his lifetime, and all indorsed, not by Wolf, but by Staehlin as his executor; all secured by real estate, and all

inventoried as belonging to the estate of Wolf. One of these notes was made by George Gehrke, for $8,000 ; two by John Ittner, for $2,000 each ; and one by Isaac Adamson, for $6,000. The loan of Staehlin was renewed by the Central Bank in January, 1873, and in the succeeding April, and was never paid by Staehlin. The Gehrke note was collected by the Central Bank on April 11, 1874 ; the Ittner notes were sold by the bank in the spring of 1873 for their face value, to one Moore, by whom they were collected. The cashier of the Central Bank testifies that the proceeds of the Gehrke and Ittner notes did not suffice to pay in full the note of Staehlin for which they were held as collaterals, and that the bank foreclosed the deed of trust which secured the Adamson note, and became the purchaser of the property for $1,000, in June, 1875. No part of the notes or their proceeds was ever returned to Staehlin. Thus these notes were wholly lost to the estate of Wolf by the misconduct of Staehlin in pledging them to the Central Bank to secure his individual indebtedness. There is no evidence that they were not worth their face value and interest. The Gehrke and Ittner notes were paid in full. It is not pretended that the Adamson note was not fully secured. The judgment is for the amount of these notes and accrued interest.

It is contended by appellant that no loss whatever accrued to the estate in consequence of any misconduct by Staehlin prior to the giving of the second bond, in September, 1873. His theory, so far as we are able to gather it from the instructions asked by him and refused, and from his brief, appears to be this : that there was evidence tending to show that the Central Bank knew at the time these notes were pledged that they belonged to the estate of Wolf, and that the executor was about to use the funds partly to make good an overdraft to the bank and partly for the general purposes of his private business ; and that therefore the notes which had not been paid or sold when the second bond

was given, and the proceeds of those that had been sold, still belonged to the estate, and were held by the bank for the estate, and might have been recovered by Staehlin at any time before final settlement for the use of the estate, and could and would have been so recovered by the successor of Staehlin, had Staehlin been removed, as it is said he must have been but for the execution of the second bond, which was procured at the instance of the beneficiary, Mrs. Wolf.

The law is settled that the sureties of an administrator who has committed a breach of his bond by converting to his own use the property of the estate will be liable upon their undertaking, though the administrator may have subsequently given an additional bond, and have made settlements carrying down the balance due the estate so as to make the sureties upon the additional bond also liable. *The State to use* v. *Drury*, 36 Mo. 281. The breach of the bond complained of in the present case is the act of Staehlin in unlawfully pledging notes belonging to the estate and converting the proceeds to his own use. If, as is contended by appellant, the bank was a party to the fraud, and knew at the time that Staehlin was committing a wrong in pledging these notes, it may well be that an action might lie against the bank, but it by no means follows that the residuary legatee has not also an action against the sureties on Staehlin's bond.

There is no evidence whatever in the record to support the statements of counsel in his brief, and the assumption in many instructions asked by him and refused, that Staehlin, at the time of the transfer of these collaterals to the bank, was overdrawn, or that he was in any way indebted to the bank. So far as any bad faith on the part of the bank is concerned, there is no direct evidence that the bank knew that Staehlin was about to apply the funds to any other purposes than those of the estate. The only facts of record tending to charge the bank with notice are those already set

forth : that the collaterals were to the order of Wolf; that the proceeds were received by Staehlin in the shape of a check to his order as executor ; were deposited to his private account, the only account which he kept ; and the fact that the cashier of the Central Bank knew at the time that Staehlin was embarrassed.

There can be no doubt that by the act of Staehlin in pledging these notes they passed from his possession and control as executor, and as a direct consequence were lost to the estate. If the bank officials knew that the executor was raising money on these collaterals for purposes not connected with the estate, they took no title to the notes which they could have set up as against the beneficiaries of the estate. But Staehlin cannot be heard to say that he and the bank were partners in a fraud upon the estate of which he was executor ; that because of the fraud no title passed to the bank; and that therefore he did not assign the notes, and therefore committed no wrong. And if he cannot allege this, his surety is in no better position.

The answer of defendant alleged as matter of special defence that, on March 14, 1874, at the special instance of Mrs. Wolf, the Probate Court ordered the executor to pay to her $5,000, because that sum at that date was all of the assets which had been realized by the executor ; that said executor obeyed said order and paid said sum, and therefore prays to be dismissed. On the trial, the defendant offered in evidence an order of partial distribution of the sum named, made by the Probate Court at the date named, on condition that Mrs. Wolf give to the executor an indemnifying bond. This order was objected to as irrelevant, and was properly excluded. Appellant insists that this order concludes the executor that so much was at that time due from him to the person named in the order, and concludes the person named in the order that no more was then on hand. It is manifest, however, that one applying for an order of partial distribution is not to be taken as asserting

that there may not be a larger sum at that time in the hands of the executor, or as accepting the statements of the executor made in previous annual settlements as correct. The accounts are in all respects open between the parties until final settlement of the estate, and an application for partial distribution is no admission that the amount then claimed is the total amount that ought to be distributed to the applicant at the time of the application.

On the trial, the Circuit Court excluded the record of a judgment against Nicholas Schaeffer, a surety on the second bond of Staehlin, in favor of Mrs. Wolf, for $27,706.60. There was no error in this. The new bond did not discharge the sureties in the former bond from liability for misconduct of their principal occurring before the second bond was given : it was cumulative. So far as the executor failed to pay the amount due upon final settlement, and ordered to be paid, this was a misconduct for which his surety in the second bond was liable ; but if that default was the consequence of a waste of the estate committed whilst the first bond was in force, a recovery might also be had on the first bond. The distributee might proceed upon either bond, or upon both. She might very well have judgment upon both bonds ; though she could have only one satisfaction, she could have two judgments. *State to use* v. *Drury*, 36 Mo. 286 ; 49 Mo. 526 ; 53 Mo. 474 ; 56 Mo. 497. Nor is there any thing in the suggestion of counsel for appellant that the record of the former judgment on the second bond might be competent as tending to show an admission on the part of Mrs. Wolf that the dereliction of the executor occurred wholly during the existence of the second bond.

It is claimed that the recovery is excessive, in that no credit is given to Staehlin for his commissions on the amount of three notes, though he is allowed commissions in his final settlement. This may be a matter to be considered in any proceedings between the sureties in separate bonds for contribution, when such a case is presented, but the amount of

Staehlin's commissions is a question with which the court has nothing to do in the present case. If these notes were wholly lost to the estate through his misconduct, and they were worth their face, the measure of damages is the value of the notes and interest, as was correctly declared by the trial court.

It is earnestly contended by counsel for appellant that inasmuch as the amount of the notes pledged by Staehlin to the bank as collateral security for his note for $12,000 was in excess of the amount for which he was liable, as the whole amount due on his note, and interest, was more than paid by the collection of the Ittner and Gehrke notes, the executor was entitled to a return of the Adamson note, and so much of the collection on the other notes as was in excess of the amount due on the note of Staehlin ; and inasmuch as Staehlin was clearly entitled to a return of this surplus, it is claimed that the neglect of Staehlin in not recovering it from the bank was a misfeasance occurring during the period covered by the second bond, and for which the sureties on that bond alone are liable.

Why none of the collaterals and no portion of the proceeds were returned by the bank to Staehlin, we cannot guess. There is no evidence in the record as to that. What does clearly appear is that Staehlin transferred all these notes to the Central Bank as security for an amount of money borrowed by him, and that no portion of the proceeds of any of them was ever collected by Staehlin as executor of the estate of Wolf, and that none of the notes ever returned to his possession after this assignment to the bank, in consequence of which they were wholly lost to the estate. This act occurred whilst the defendant in the present action was liable as surety on Staehlin's bond. Whether any diligence on the part of Staehlin after he had committed the wrong which resulted in this waste of the estate would perhaps have enabled him to recover a por-

tion of the property thus misapplied, we cannot tell. There is no evidence on that point. As a matter of fact, it appears that the bank returned nothing to the estate. There can be no doubt that Staehlin, on this state of facts, was liable for a conversion of the notes ; and his surety at the time of the conversion was also liable, not for the amount which might possibly have been lost, but for the actual amount that was lost to the estate in consequence of the wrongful act of his principal.

The instructions given are in accordance with the views of the law expressed in this opinion. We see no error in the record to warrant a reversal of the judgment, and, with the concurrence of all the judges, it is affirmed.