# THE MARYLAND STEEL COMPANY *vs.* J. CLARENCE ENGLEMAN.

*Continued Use of Defective Machine After Promise of Employer to Remedy Defect—Fellow Servants—Instruction to Jury—Corroborating Witness.*

An instruction to a jury containing nearly 2,000 words and covering three and a half pages of the printed record is properly refused on account of its extreme length, and because it is likely to confuse the jury.

Plaintiff, a workman employed to operate a rapidly revolving machine

run by a belt, reported to the foreman of the operating room that the belt was in bad order, and the latter promised to supply a new one, but did not do so. Plaintiff continued to run the machine and a few days afterwards the belt broke and injured him. This foreman employed and discharged the men in his department, and all reports and complaints were required to be made to him, and it was his duty to remedy the defect complained of. *Held,* that the neglect of the foreman to supply a safe belt is to be treated as negligence of the employer, and the foreman in this regard was not a fellow servant with the plaintiff.

Whether the belt on the machine in question was unsafe and whether the plaintiff's injury was caused by the alleged defect in the belt, and whether he was guilty of negligence in his mode of operating the machine were all questions for the jury.

When an employee reports to his master that the machinery with which he is required to work is in a defective condition, and the master promises to remedy the defect, then the continued use by the employee of the defective machinery in reliance upon the promise is not such contributory negligence, as a matter of law, as prevents the employee from recovering damages for an injury caused by the defective machinery, unless the danger of its continued use is manifest and imminent.

Where two witnesses contradict each other as to a matter concerning which they have equal means of knowledge, it is not now competent, under Code, Art. 35, sec. 3, to corroborate one of them who is a party to the cause by evidence showing that he previously made similar statements to a third person.

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.)

*Defendant's 1st Prayer.*—That there is no evidence in the cause of any such negligence on the part of the defendant in the discharge of its legal obligations to the plaintiff as would entitle him to recover in this action under the pleadings. (*Refused.*)

*Defendant's 2nd Prayer.*—That upon the undisputed evidence it was apparent that the plaintiff directly contributed to the accident by his own want of ordinary care and prudence and the verdict should be for the defendant. (*Refused.*)

*Defendant's 3rd Prayer.*—That upon the undisputed evidence in this case the injuries sued for were caused by the want of ordinary care on the part of the plaintiff and his fellow workmen and the verdict should be for the defendant. (*Refused.*)

*Defendant's 4th Prayer.*—That the undisputed evidence in this case shows that the risk and danger of operating the machine which the plaintiff was using at the time of the accident was obvious and known to the plaintiff or ought to have been known to the plaintiff to be unsafe and dangerous and the plaintiff is not entitled to recover under the pleadings in this case.　(*Refused.*)

*Defendant's 5th Prayer.*—That under the pleadings in this case, the burden of proof is upon the plaintiff to show that the injuries sued for, were caused by the alleged defects of the belt referred to in the evidence.—(Granted as modified by striking out the additional words: "and that there is no legally sufficient evidence to show that said injuries were caused by said defects, and the verdict should be for the defendant.")

*Defendant's 6th Prayer.*—The jury are instructed in this case, that even if they find, that the injuries sued for were caused by the defective belt, and that the foreman of the defendant promised to supply said plaintiff with a new belt, and did not supply plaintiff with a new belt, and that said plaintiff relied on said promise and was induced thereby to work with dangerous and unsafe machinery, and while so working was injured, still the plaintiff is not entitled to recover unless he used due and ordinary care in operating said unsafe and defective machinery, which showed plainly the extra hazard and risk of operating and which the plaintiff knew to be unsafe and hazardous, (if the jury find he so knew it to be unsafe and hazardous.)　(*Granted as modified.*)

*Defendant's 7th Prayer.*—The defendant prays the Court to instruct the jury, that the burden of proof is upon the plaintiff to show by a preponderance of testimony, that the injuries were caused by the want of ordinary care on the part of the defendant, and they must further find that the plaintiff was exercising ordinary and proper care himself.　(*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*Alexander Preston*, for the appellant.

1. There is no evidence in the case to prove that the belt broke or parted by reason of any defect therein, but on the contrary the affirmative evidence shows that the lacing came out.

An analysis of the testimony in this regard shows that the plaintiff considered the belt defective in the following particulars: (1) That it was rough and dirty and coated with salt. (2) A place was beginning to tear up, where a splice had been made. (3) As far as he knew ammonia rotted leather. (4) Where the two strips were glued together, it had commenced to burst. (5) It was rotten at places where it had frayed up.

This is the testimony upon which the appellee was permitted to recover. From the beginning to the end of the record there is not one word of testimony to show that the belt broke or parted by reason of the defects above enumerated.

If it was rough, dirty and covered with salt, it was the operator's own fault. The splice was found in the belt after the accident, therefore that was not the cause. So that leaves the question, so far as the appellee is concered, to the choice of proving that it must have broken where it was glued together and commencing to burst, or that it parted at some place vaguely described as frayed and rotten. The is no evidence to show that either one or the other was the cause. And grouping together a number of independent facts is quite insufficient to establish negligence, where no one of them proves negligence, and this is expressly decided in *A. & B. Short Line R. R.* v. *Pumphrey*, 72 Md. 87.

2. Assuming for the argument's sake that the injury actually occurred through a defect in the belt, and that the foreman, Powell, was guilty of negligence in not ordering a new belt, nevertheless there can be no recovery, as the evidence shows that Powell was a fellow servant of the appellee. *State* v. *Malster*, 57 Md. 287.

It was incidental to the use of the machine that new belts would have to be used occasionally; and they were always on hand simply requiring an order from Powell; and the appel-

lant employed Powell to give such an order.    Surely this employment of Powell was as a servant and not as a vice-principal or agent.    The appellant complied with the duties of the master when the company had furnished suitable means and appliances for operating the machine, and had used due care in the selection and employment of Powell.    If, as a matter of fact, Powell failed in his duty in not ordering a new belt, it was the neglect of a fellow servant and not the failure of the master, who had furnished safe and suitable appliances in the first instance, and had also provided adequate means for the maintenance of the machine in a safe and efficient condition. If Powell did neglect his duty in the premises, it was therefore, a risk which the appellee had accepted in entering the employment.    There is no real distinction between this case where the foreman failed to use the means provided, and that of the foreman who used defective plank for a scaffold, where the master had supplied sound materials.    There is no decision in Maryland that supports the contention of the appellee, that a foreman becomes a vice-principal, because he orders new material.    And it is urged upon the Court that the case of *Yates* v. *McCullough Iron Company*, 69 Md. 370, is conclusive upon this point.    In that case, a man named Cawley was manager of the "Carbon" Works, and he was charged with negligence, in failing to supply a new rail for a tramway, in consequence of which failure the plaintiff was injured.    The plaintiff claimed that he was entitled to recover on account of Cawley's negligence in failing to order this rail, and that Cawley was a vice-principal because it was his duty to order such rail.    That case presents striking similarities, in regard to the respective duties of Cawley and Powell.

3. If this Court should determine that the two preceding points are not well taken and should hold that there was evidence of the belt breaking by reason of the defects, and also that the foreman was a vice-principal under the testimony, set out in the record, still it is contended that the appellee is not entitled to recover, because he knew of the defects, and with knowledge of the danger continued to operate the machinery.

That he knew both the alleged defects and danger is conceded, but he denies that he assumed the risk, because he had asked for a new belt, and the master's representative promised to give him a new belt, but neglected to do so. This contention is based upon an exception to the general rule, that the servant assumes all such risks, as are patent. The question apparently has never been discussed or decided in this State, but has been recognized and applied in other jurisdictions, but with many qualifications, and never to the extent claimed for it in this case. · The general rule is thus stated in 20 *Encyclopædia*, 127: "Where the promise of the master to repair defects, of which the servant has complained, induces the servant to continue in the employment, he may recover for injuries received within a reasonable time for the repair of the defects; unless the danger is so imminent that no reasonable man would continue in the service."

·Of course, the promise must be made by a vice-principal, otherwise it is simply the act of a fellow servant. *W. R. R.* v. *Kaster*, 80 Ills. Apps. 572; *C. R. R. Co.* v. *McDowell*, 16 Ky. L. Rep. 1; *Neeland* v. *Lynn, etc., R. R.*, 173 Mass. 42; *Ehmke* v. *Porter*, 45 Minn. 338; *Wright* v. *Southern R. Co.*, 80 Fed. 260; *Smith* v. *Howard*, 22 L. T. N. S. 130; *Sakelton* v. *Manister R. R.*, 107 Mich. 16; *G., etc., R. R.* v. *Brentford*, 79 Tex. 619. In other words, if the master is not responsible for the negligence of an employee in omitting to do a certain act he cannot be responsible for a promise to do such act.

In this case the appellee simply says that he wishes a new belt. He does not say that the old belt is in bad condition and he fears to continue using it, on account of the danger to himself. He neither says nor intimates that he will not continue the work unless the defective condition is removed. In fact, he gives no reason whatever, for wanting a new belt. Is it not just as probable to infer from his testimony, that a new belt was required to facilitate or increase the efficiency of the machine as it was that the belt in use was defective? It is true that it is not necessary to say in so many words that the old belt is in defective condition, but it is certainly requisite that a

fair inference may be drawn that this is the ground for the request. It is not so in this case; Powell might very reasonably suppose that appellee wanted a new belt for reasons entirely apart from any question of defects. The belt in use was of the best, and had been used only six weeks before. It is only reasonable in the application of an exception to a general rule, that the proof of the existence of the exception should be fairly clear, not founded upon vague and general requests or statements. In order to entitle the servant to the benefit of this exception, something must have been said which could reasonably be construed as a stipulation to remedy the dangerous conditions in question. *Labatt on Master and Servant*, 1185; *Shackelton* v. *R. R.*, 107 Mich. 16; *McAndrews* v. *M. U. R. R.*, 15 Mont. 290. The servant says: "The belt is defective and is liable to injure me, and unless the belt is replaced, I will leave the employment." In reply to this the master should say: "Yes, the belt is defective and dangerous, but if you will keep on working with that belt I will replace it in a reasonable time, and until it is replaced I will be responsible for any injury to you." This must be the agreement in effect. But it is manifest that such was not the fact in this case. Accepting appellee's own statement, it simply amounted to this: "Mr. Powell, I want a new belt," and the foreman replies: "I will give you a new belt."

In this case the appellee neither protests nor objects; he asks for a new belt, and gives no reason to the foreman for this request. He does not mention defects or dangers, or that a new belt may be required in order to facilitate or increase the efficiency of the machine. "In order to bring a case within the general rule, that by continuing in the employment with knowledge of the defects, it must be shown that he not only called the master's attention to such defects, but also in some way objected to assuming the risks." *I. & St. L. R. R. Co.* v. *Watson*, 114 Ind. 20.

The appellee does not appear to have complained that the defect was making his work more dangerous or that he ever thought of quitting his job unless repairs were made. *Bod-*

*well* v. *Nashau Manufacturing Co.*, 70 N. H. 390; *Showalter* v. *Fairbank & Co.*, 88 Wis. 376; *Labatt on Master and Servant*, vol. 1, sec. 421. The promise must be the inducing motive for the servant continuing to work. *Labatt on Master and Servant*, vol. 1, sec. 421; *I. &c. R. R.* v. *Turner*, 3 Tex. Civil Appls. 487. And where servant did not complain on his own account. *Lewis* v. *N. Y. & N. E. R. R.*, 153 Mass. 73.

To sum up the objections to applying this principle to the case at bar, it is contended, that the appellee's evidence shows : ' *a.* That the appellee was not induced by the alleged promise to continue in the employment. *b.* That he did not rely upon the same. *c.* That he did not complain of any danger to himself. *d.* That he did not call the attention of the master to the defects. And that evidence to establish such a state of facts or anyone of them is entirely lacking. ·

4. The appellee was guilty of contributory negligence in two particulars :

1st. In continuing to use at all, a machine so defective that the danger was constant and imminent.

2nd. In using the machine in a way that was liable to injure him, when he could have continued to operate it, without the slightest danger to himself.

In *Levesque* v. *Janson*, 165 Mass. 16, where a vicious horse with rotten harness was driven by the servant, the Court held that such a combination was contributory negligence *per se*, and the servant could not recover, even if the master had promised to supply new harness. And see also *Erdman* v. *Illinois Steel Company*, 95 Wis. 6, where employee continued to use a cracked saw to cut steel plates, notwithstanding a promise to repair. In neither of the above cases was the danger any greater, if as great, as the danger of using a rotten belt, revolving a thousand times a minute. "If the risk is so obvious and immediate that serious injury may probably result from a continuance of the work, then the doctrine that the employee can proceed relying upon the promise to repair or remove the danger does not apply." *Beach on Cont. Neg.*, sec. 373, p. 544.

The evidence shows very plainly that the machine could have been operated, not only quite as well, but also with absolute safety from the motor.  Indeed, if the incredible assertion of the appellee is believed, that he was set to work on machinery without instructions; he had seen the machine operated from this secure position, as he was around the machine three months before he took charge of it himself.  And daily turned on the motor.  So that he was fully aware that he could operate the machine with perfect safety, defective belt or not.  That he was willing to recklessly disregard a safe way for one that placed him in constant and imminent danger, can only be regarded as willful and extraordinary carelessness; or (as is most probable) the belt was in perfectly sound and safe condition, and he knew it, but the lacing came out, as it did so frequently, under his careless management.

Where, as a matter of fact, the servant selects the more dangerous method, when there is a safe one, and has knowledge, actual or constructive, of the fact that it was dangerous he is negligent as a matter of law. *Labatt on Master and Servant*, sec. 333; *Baily's Master Liability*, 392.  "A servant who carelessly pursues a method obviously more dangerous, where there is a natural and safe method of performing his service is guilty of contributory negligence which will prevent recovery for the injuries sustained.   *Gowen* v. *Hailey*, 6 C. C. A. 190; *Morris* v. *Duluth*, &c., 108 Fed. 747;  *Walker* v. *Atlantic R. R.*, 103 Ga. 820;  *Central R. R. Co.* v. *Mosley*, 112 Ga. 914;  *St. L. Bolt and Iron Co.* v. *Burke*, 12 Ills. Apps. 372.   And it is no excuse that the safe method involves more trouble.  *Pennewell* v. *Harvey*, 78 Ills. App. 278;  *Shea* v. *Pa. R. R.*, 11 Cent. Rep. 769;  *Tonko* v. *Central R. Co.*, 37 N. Y. Sup. 144;  *Galvin* v. *Old Colony R.*, 162 Mass. 533.   And the servant must use a greater degree of care, where he has knowledge of the defect.  *Gorman* v. *Des Moines Brick Co.*, 99 Iowa, 257; *Jones* v. *N. Am. File Co.*, 21 R. I. 125.  It will hardly be contended that a servant was in the exercise of ordinary care, if his conduct while he was using a defective appliance, was merely as cautious as that of a prudent person using the same appliance in a sound condition.  *Labatt on Master and Servant*, 1225.

5. There was error in allowing the testimony of a conversation between the appellee and his sister-in-law, in reference to an alleged conversation between Powell and the appellee to be given to the jury.

*Stevenson A. Williams* and *Osborne I. Yellott,* for the at pellee.

There is an exception to the general rule that if the servant is aware of defects in appliances or machinery so furnished him, and elects to continue to work with the same in their defective condition, he thereby assumes the risk of injury through such defects.

*And that exception is, that where the servant, knowing of the defect, has complained of the same to the master, and the master has by his promise to amend such defect, induced the servant to remain in his employ, the servant's knowledge of the defect does not serve of itself, as it ordinarily would, to exonerate the master from liability for his failure to perform his primary obligation to the servant.*

This, as we say, is a generally recognized rule, by which we mean that the underlying principle of the same is recognized in practically every text-book dealing with the subject of negligence, and by practically every Court in both America and England before which it has come for consideration. The exception is, it is true, stated differently by different text-book writers and Courts. In some jurisdictions it is based on one ground, and in others those grounds are disputed, and it is based on others, but the principle stated underlies them all, and the only question in all the jurisdictions is whether or not the case before the Court falls within the rule as accepted and laid down by that particular Court. *Buswell on Law of Personal Injuries,* sec. 212; note to *Ill. Steel Co.* v. *Mann,* 40 L. R. A. 781; 1 *Shearman & Redfield on Negligence* (4 ed.) sec. 215; *Cooley on Torts,* 559; *Beach on Contrib. Negligence,* sec. 140; 2 *Thompson on Negligence,* 1009; *Wood on Master and Servant,* sec. 378; *Wharton on Negligence,* sec. 220; *Deering on Negligence,* sec. 201; *Saunders on Negligence,* 127; *Moak's*

*Underhill on Torts*, 61; *Hough* v. *Railway Co.*, 100 U. S. 213; *Parody* v. *Chicago, etc., Co.*, 15 Fed. Rep. 205; *Woodward, Iron Co.* v. *Jones*, 80 Ala. 123; *Eureka Co.* v. *Bass*, 81 Ala. 200; *Missouri Furnace Co.* v. *Abend*, 107 Ill. 44; *Belair* v. *Chicago Ry. Co.*, 43 Iowa, 662; *Green* v. *Minn. Ry. Co.*, 31 Minn. 248; *Mfg. Co.* v. *Morrissey*, 40 Ohio St. 148; *Patterson* v. *Pittsbg. R. Co.*, 76 Pa. St. 389; *Gulf, etc., Ry. Co.* v. *Donnelly*, 70 Tex. 371; *Brabbits* v. *Chicago, etc., Ry. Co.*, 38 Wis. 289; *Stephenson* v. *Duncan*, 73 Wis. 404; *Holmes* v. *Clarke*, 6 Hurl. & N. 349; *Clarke* v. *Holmes*, 7 Hurl. & N. 937.

The only effect of the adoption of this principle would be, under the weight of authority, to rebut the presumption that the servant has assented to assume the risk of the known defect. In Maryland this presumption arises where the servant continues in his employ in the face of a known danger arising from unsafe appliances or methods. *Yates* v. *McCullough Iron Co.*, 69 Md. 370; *Wood* v. *Heiges*, 83 Md. 257; *Hamelin's case*, 57 Md. 287.

This assumption of risk is to be distinguished from contributory negligence, which only exists when the danger of a given risk is so imminent that no person of ordinary prudence would assume it. Every employee assumes the natural and ordinary risks of his employment. But he is not necessarily negligent in so doing, since he only assumes risks which other ordinarily prudent and cautious men assume in the same employment. And if he is injured from such assumed risk he is not properly said to have contributed to his own injury. He has simply been injured by a risk which he voluntarily assumed. This distinction is of the utmost importance in applying the principle for which we here contend.

But, even if the complaint and promise are made, if the risk of continuing in the employ for a short time is so great and the danger of so doing, so imminent, that no man of ordinary prudence would continue in such employ, then the promise to amend the defect cannot be taken to relieve the employee of the charge of contributory negligence in case he is injured by reason of such defect. In such a case the Court could very prop-

erly say as a matter of law, despite the promise, that the plaintiff had been guilty of contributory negligence, and on that ground withdraw the case from the jury. The record, in this case, however, discloses no such condition of facts.

Again, a Court might in a given case, very properly say that as a matter of law a plaintiff had continued to work with a defective appliance for so long a time after the promise had been given, as to disentitle him to claim that he was relying on such promise at the time of the injury.

It will be seen by reference to the authorities above referred to, and particularly the note in 40 L. R. A. (at p. 789), that there is some question whether an employee is permitted to rely on the promise for such time as it would take to make the repair, or for such time as he has a right to rely on the promise. The distinction hardly seems to be a substantial one, since one seems practically tantamount to the other, but all agree that he is entitled to rely on it for a *reasonable time.* This is ordinarily a question for the jury, but might in certain cases where the employee had continued to work for what was clearly an unreasonable time under the circumstances of the particular case, be a question for the Court. It is submitted that in the case at bar the appellee was justified in continuing as long as he did both as a matter of fact and as a matter of law.

Again, the Court might properly take the case from the jury in the absence of evidence to the effect that the plaintiff was induced to remain in the employ by the promise of the master, or in the absence of evidence to the effect that he made the complaint from a sense of fear that he would be injured unless the defect was remedied.

These two points are considered together because they are both matters of fair inference to be drawn by the jury from all the evidence rather than susceptible of proof by direct statements. "When complaining of defective instrumentalities or machinery, it is not necessary that the servant shall state in exact words that he apprehends danger to himself by reason of the defects, nor need there be a formal notification that

he will leave the service unless the defects be repaired or remedied.　It is sufficient if, from the circumstances of the case, it can be fairly inferred that the servant is complaining on his own account, and that he was induced to continue in the service by reason of the promise." *Rothenberger* v. *Northwestern Consol. Mill Co.*, 57 Minn. 461.

And lastly, it is clear that the Court could properly withdraw the case from the jury if the plaintiff failed to adduce legally sufficient evidence to show that the injury occurred through the negligence of the defendant.

But in this case there was certainly an abundance of testimony from which the jury could infer that the injury happened because of the defective condition of the belt in question.　From the very nature of the case it was impossible for anyone to say exactly how the belt came to break.　But the evidence of the appellee is positive and unequivocal that the belt was in a defective and weakened condition immediately before the accident, that it suddenly burst and something struck him, after which he knew nothing.　Just where it broke he was unable to say.　And it is not strange that he could not, as the belt when it broke was going around at the rate of some hundreds of revolutions per minute.　Mrs. Von Payr saw it immediately after the accident, and said it was broken into small fragments.　A portion of the belt itself was in Court and was shown to the jury.　Being men of practical knowledge and experience they could certainly form a conclusion from looking at the belt whether it had burst because it was in a defective condition or because subjected to some unusual strain.　Some of the appellant's own witnesses proved conclusively that the belt must have burst or the appellee could not have been hurt.　Having shown the condition of the belt prior to the accident, the appellee described the accident and said that it was due to the defective belt, which was certainly a fair inference from the testimony.

The appellee's whole case depends upon the distinction between Powell, the foreman, and as such, the fellow servant of the appellee, and Powell, the representative of the master, and

as such the vice-principal or agent of that master. And in asking this Court to regard this distinction, we only ask it to follow the spirit of its own decision in one of the earlier cases which, so far as we know, is today recognized to be the law in Maryland. *C. & P. R. R. Co.* v. *State, use of Moran* (1875), 44 Md. 283.

In the case at bar we make no contention that Powell, the foreman, was not the fellow servant of the appellee in his ordinary capacity of foreman. Nor do we contend that he was a vice-principal in the general sense laid down by later cases, or the representative of the master to such an extent that the master would be liable for *all* his acts of negligence, no matter of what character. We do not feel it really necessary even to go so far as to contend that he was agent or representative of the master with respect to furnishing new belts to replace those which became unfit for service in the ammonia rooms, though in point of fact we believe he could properly be so held under the facts of this case.

But we do contend most earnestly that every employee has the right to complain to his employer of the defective condition of appliances with which he is working, and has a right to receive from his employer a promise to repair such defect. *And we further contend that when a master places in charge of a certain department of his work a foreman, and says to his employees, "There is your foreman, make your complaint to him, not to me," then that foreman is, at the very least, with respect to receiving such complaints and making promises in response thereto, the representative or agent of the master.*

This view of the case in no wise involves the doctrine of fellow-servant. The negligence *vel non* of the foreman doesn't enter into the question in the remotest degree. It is certainly not the negligence of the foreman that the servant makes the complaint. It is certainly not the negligence of the foreman that he makes the promise. And the only point at which the negligence of the foreman can possibly enter into the case is through his failure to see that the promise is kept.

But it must be remembered that the whole doctrine of the

non-liability of an employer for the negligence of an employee rests on the assumption that the servant assumes the risk of the negligence of his fellow servants.

And we contend that when a servant consents to work with defective appliances on the express promise of the proper agent of the master that the defect will be remedied, he cannot justly be held to assume the risk that the promise will not be fulfilled on the ground that the agent was in point of fact his fellow servant in other particulars.

To hold the contrary would result in the utmost injustice to the servant. It would enable the master to hold the servant at all times and under all circumstances responsible for any injuries that might happen to him, and to lull such servant into a sense of security by reason of a promise which he is under no obligation to keep. It means that if the servant knows of the defect and does not complain, then he assumes the risk of working with the defective appliance. And if he knows of the defect and does complain, and receives the promise of the agent of the master authorized to give that promise, then he assumes the risk of such agent being negligent in failing to carry out the promise.

And if, to be more technical, we regard the matter from the standpoint of proximate cause, and say that the proximate cause of the injury was the failure of the foreman to repair the machinery, then a denial of the principle for which we contend would be to enable the master to say, "Work with this machinery on the faith of the foreman's promise to repair it, and if the proximate cause of any injury you may suffer is the defect in question, I will be responble; but it is the foreman's business to repair that machinery, and if an accident happens I am going to claim that the defect was not the proximate cause, but that such cause was the foreman's failure to do his duty." It is clear that this view would be a most unfair one. And it is also clear that the true *rationale* of the rule for which we contend is that the master's promise, made through his agent empowered to make that promise, operates as a rebuttal of the presumption that the servant assumes the risk of working

with the defective appliance, and also as a rebuttal of the presumption that he assumes the risk of the negligence of his fellow servant with respect to the subject-matter of that particular promise.

The evidence in the case at bar is clearly sufficient to sustain the contention that the foreman Powell had full charge of the work in the ammonia rooms, empowered to see that proper belts were furnished, and designated by the appellant as the person to whom all complaints with respect to defective belts should be made. The evidence is also clear that the appellee made the complaint and received the promise.

The authorities are clear and convincing to the effect that where the complaint is made to the employee who has the power and whose duty it is to see that the defect is remedied, the complaint is to be regarded as having been made to the master, and the promise of such employee is to be regarded as the promise of the master. *Hough* v. *Texas & Pacific R. R. Co.*, 100 U. S. 213; *Conroy* v. *Vulcan Iron Works*, 62 Mo. 35; *Railway Co.* v. *Brentford*, 79 Texas, 619; *Eureka Co.* v. *Bass*, 81 Ala. 200; *Mfg. Co.* v. *Morrissey*, 40 Ohio, 148.

If it be contended that Powell was a fellow servant with respect to the maintenance of the machinery in proper condition, we still contend that he was the *agent* entrusted with the duty of seeing that new belts were furnished when new belts became necessary. And if he be held a fellow servant in that respect, then we say that at the very least he was not a fellow servant of the appellee when he was empowered to hold himself out as the representative or agent of the master to receive complaints, when he did so hold himself out, when the master had in effect told the appellee to make his complaints to him, as its agent, when the servant did as he was required to do, and then relying on that agent's promise and remaining in the employ for his master's benefit as well as his own, was injured by the defect complained of.

PEARCE, J., delivered the opinion of the Court.

This appeal is from rulings of the Circuit Court for Harford

County in a suit in which plaintiff obtained a verdict for $7,000 against the Maryland Steel Company of Baltimore County for injuries received while in the employ of that company.

The plaintiff's evidence showed that he had been working for the defendant company for about two months before the accident in which he was injured, in what was known as the ammonia room; that his duty was to operate a salt drying machine, which was run by an electric motor whose power was transmitted to the machine by a belt of about 30 feet in length running from the motor to the line shaft, about 15 feet from the motor, the belt being twice the length of that distance; that it was necessary to the proper operation of this machine to run the motor at a high speed, and he was running it at the time of the accident at the usual speed of about 1,100 revolutions a minute, and using, as he always did, due care and caution in running, stopping and starting the machine; that the belt referred to was made of several strips of leather glued or cemented together, and the ends laced together with leather strings; that it was the duty of the operator to keep the lacing of the belts in order, but whenever a new belt was to be put on, it was applied for, and furnished by the foreman of the ammonia room, and that the life of these belts was about four months, as the wet salt and ammonia ate into the belts and rotted them out; that the company's method of doing business was to assign a foreman to each department; that Milton W. Powell was foreman of the ammonia room, and Mr. Parsons foreman of the coke oven department, and other persons were placed in charge of all other departments; that Powell employed and discharged all the men in his department, and that in each department all reports and complaints were required to be made to the foreman, and the higher officers of the company had nothing to do with these matters, and, in the language of one of the witnesses, that "if a man would attempt to go over the foreman, he would not last long;" that about two weeks before this accident, plaintiff reported to Powell that this belt was getting in bad order, and it would soon be time to get a new one; that Powell looked at it and said

plaintiff should have a new one but neglected to get it; that at that time, at a place where a splice had been put in, the edge was beginning to curl up; that two or three days before the accident he asked Powell if he had forgotten his new belt, and he replied, "No, I will give you one;" that plaintiff relied on these promises and expected to be given the new belt, and that he did not quit work because he relied upon these promises and upon their performance within a reasonable time; that on the day of the accident he was running the machine at the usual speed, and using all the care he could in its operation, when the belt burst, and he was struck by it and knocked senseless, receiving injuries of the most serious and dangerous character, permanently disabling him from work or labor of any kind. There was evidence that this belt was broken to pieces, could not be repaired for use, and was thrown out upon the dump pile, and that it was not broken through the loosing of the lacing, which it was plaintiff's duty to repair and keep in order, but through the bursting of a splice. At the close of the plaintiff's case, the defendant offered five prayers seeking to withdraw the case from the jury upon various grounds, all of which were rejected, and this ruling gave rise to the first exception, but as the defendant proceeded to offer evidence in its own behalf, this exception is waived.

The defendant then offered evidence to show that while plaintiff was running this machine, there was considerable trouble with it for want of proper oiling, which caused it to stick and weaken the belt, and to affect the lacing first, as that is the weakest part of the belt, and that when the lacing broke the belt was more likely to wrap round the shaft than when it broke at a splice; that the machine could be started either from the controller or the friction clutch, but that the former was the safer method though either was allowable; that plaintiff was not a careful operator and lacked judgment, that he always started the machine from the friction clutch and would leave torches and candles on the casing of the machine after warning of the danger; that he never asked for a new belt, and that on the day of the accident and shortly after, he

told Powell that he heard the lacing hitting against the pulley, or something smacking against it, but he thought he could finish the turn without shutting the machine down; that after the accident the end of the belt next the shaft was wrapped round the shaft, in good condition, with the lacing in it, but the outer end was broken off, and the rest of the belt was split, but that it was not rotten or frayed before the accident, and was a fairly good belt; that it was afterwards repaired by cutting out a piece and inserting another, and was then put back on the machine and used for about a month, when it was replaced by a new belt; that there was a torch on the casing the afternoon of the accident, and afterwards a torch newly broken was picked up from the floor.

At the close of all the testimony, the plaintiff offered two prayers, of which the first was refused, and the second was granted. The defendant offered seven prayers of which the 1st, 2nd, 3rd and 4th were refused, the 7th was granted as offered, and the 5th and 6th were modified and thus granted. Defendant's first prayer affirmed there was no evidence of any such negligence on its part as justified the plaintiff's recovery under the pleadings; the second, that it was apparent from the undisputed evidence that plaintiff was guilty of contributory negligence; the third, that the undisputed evidence showed the injuries complained of were due to the negligence of a fellow servant; and the fourth that the risk and danger of using the machine at the time of the accident was or should have been known to the plaintiff, and therefore he could not recover.

The modification of defendant's fifth prayer merely struck out the concluding part which withdrew the case from the jury, and the modification of the sixth prayer merely required the jury to find that plaintiff knew at the time of the accident that the use of the machine was unsafe and dangerous.

Plaintiff's second prayer was the usual prayer as to damages in such cases, when allowed to go to the jury.

Plaintiff's first prayer is of extraordinary length, covering three and a-half pages of the printed record, and containing

nearly two thousand words.    This Court has always discouraged prayers of extreme length, as not adapted to aid and enlighten the jury, and in *Whiteford* v. *Burckmyer and Adams*, 1 Gill, 153, approved in *Coal Co.* v. *Scally*, 27 Md. 603, the Court said: "If counsel present to the Court a complicated and involved statement which it will be difficult for the jury to understand distinctly, it will be a sufficient ground upon which the Court should refuse to give a direction in the terms asked for."    This prayer, we think, would unduly tax the patience and discriminating faculty of the jurors, and for that reason we think was properly refused.    Moreover as the verdict was rendered for the plaintiff, it is apparent that even if erroneously rejected there was no resulting injury.

The declaration alleged that it was the duty of the defendant to furnish plaintiff with suitable and safe machinery and appliances for the performance of his work, but defendant negligently supplied defective and unsafe machinery and appliances, and so known to be by defendant, who induced the plaintiff to work with the same by its promise to him that said appliances should be made safe within a reasonable time, and that plaintiff relied on said promise, and continued to work with said defective appliances, and that before the expiration of the time in which he had a right to expect that the promise could be reasonably fulfilled, and while he was using due care in the operation of said machinery and appliances, one of the same gave way by reason of the defects therein, and he received the injuries complained of.

By the granted prayers, the jury were instructed, first, that under the pleadings in the case the burden of proof was on plaintiff to show that the injuries were caused by the alleged defects in the belt.    Second, that even if the jury so found, and also found that the defendant's foreman promised plaintiff to supply a new belt, but did not do so, and that plaintiff relied on this promise, and was thereby induced to continue working with the belt, and was injured while so working, still he could not recover unless he used due and ordinary care in operating the unsafe and defective appliance, which plainly

showed the extra risk and hazard in its operation, and which plaintiff knew to be unsafe and hazardous, if the jury found he so knew it to be unsafe and hazardous. Third, that the burden of proof was on the plaintiff to show by preponderating testimony that his injuries were caused by want of ordinary care on defendant's part, and that the plaintiff was in the exercise of due and ordinary care on his part.

No citation of authority is required to show that in this State the master's duty is to supply the servant with suitable and safe appliances for the performance of his work; that if he neglects this duty, and the servant, with knowledge of the defective and unsafe condition of such appliances nevertheless continues to work with them, he thereby assumes the risk of injury resulting from such defects; and that he cannot in any event recover for injuries resulting directly and solely from the negligence of one who is merely his fellow servant. It appears from the summary we have given of the testimony that there was evidence requiring it to be left to the jury whether the belt supplied by the defendant was defective and unsafe, whether the plaintiff's injuries were caused by the breaking of this belt, and whether he was guilty of any negligence in the manner of performing his work, contributing to his injuries, and these questions being so left to the jury, by the granted prayers, it follows that they were correctly granted, unless, upon some other controlling principle, the case should have been withdrawn from the jury.

The defendant's rejected prayers Nos. one and three proceed upon the theory that Powell, the foreman of the ammonia department, was the mere fellow servant of the plaintiff, for whose negligence in supplying a defective instrumentality, the defendant cannot be held liable; and the defendant's rejected prayers Nos. two and four are framed upon the theory that the danger of using the defective belt being open and obvious to the plaintiff, its use was in law contributory negligence notwitstanding that such use was continued in reliance upon Powell's promise to supply a new belt. The defendant's fifth prayer as offered instructed the jury there was no legally suf-

ficient evidence that plaintiff's injuries were caused by the alleged defects in the belt, and we have already said this was a question for the jury. The modification of defendant's sixth prayer requiring the jury to find that the plaintiff knew the operation of said machinery was unsafe and hazardous, was free from objection.

We are of opinion that Powell's neglect to supply a safe belt, if found as a fact by the jury, must be regarded as the negligence of the defendant.

A sufficient authority for this view is found in *Moran's case*, 44 Md. 292, 293 and 294, in which the Cumberland and Pa. R. R. was held liable for the negligence of its master of machinery and general superintendent in the purchase of a second-hand engine, in such condition that when repaired and put in use, it exploded and killed the equitable plaintiff's minor son. In the opinion in that case JUDGE ALVEY cited with approval the language of CHIEF JUSTICE COCKBURN in *Clark* v. *Holmes*, 7 H. & N. 493, where it was said, "Where a servant is employed on machinery from the use of which danger may arise, it is the duty of the master to take due care, and to use all reasonable means to guard against and prevent any defects from which increased and unnecessary danger may occur;" and added, "The rule I am laying down goes only to this, that the danger contemplated on entering into the contract shall not be aggravated by any omission on the part of the master to keep the machinery in the condition in which, from the terms of the contract, or the nature of the employment, the servant had a right to expect it to be kept." Following that case, JUDGE ALVEY said, "Now, as it was the duty of the defendant to supply as far as it could be done by the exercise of due and proper care, safe and sound machinery, the persons authorized to select and purchase the engine, must be taken as the representatives of the defendant, and any omission or neglect committed by them, must be regarded as that of the defendant, for which it is liable. These agents therefore thus entrusted with the duty of purchasing the engine are not to be regarded as fellow servants of those operating

it; for in respect of its selection and purpose, they acted as agents representing the principal in regard to matters for which the latter might be liable to its servants."

There was therefore no error in the rejection of defendant's first and third prayers. It follows from the principles of that case that the promise of Powell to supply a new and safe belt must be regarded as the promise of the master and this is sustained by *Fort Wayne R. R.* v. *Gildersleeve*, 33 Mich. 133, and the copious notes to *Illinois Steel Co.* v. *Mann*, 40 L. R. A. 796.

The question raised by defendant's second and fourth prayers, namely, whether the continued use of the defective belt in reliance upon such promise, was not in law contributory negligence, still remains to be considered.

Notwithstanding the numerous cases for personal injuries to be found in the reports of this State; this question does not ever appear to have been presented in this Court for decision and we are therefore at liberty to determine it as upon first impression. JUDGE COOLEY, in his work on Torts, p. 559, states the law thus: "If the servant, having a right to abandon the service because it is dangerous, refrain from doing so in consequence of assurances that the danger shall be removed, the duty to remove the danger is manifest and imperative, and the master is not in the exercise of ordinary care, unless or until he makes his assurance good. Moreover the assurances remove all ground for the argument that the servant by continuing in the employment, engages to assume its risks. So far as the particular peril is concerned, the implication of law is rebutted by the giving and accepting of the assurance; for nothing is plainer or more reasonable than that parties may, and should, where practicable, come to an understanding between themselves regarding matters of this nature." It would be difficult to improve upon the clearness and reasonableness of this statement, and the same view is held by other text-writers, such as *Wood on Master and Servant*, and *Buswell on the Law of Personal Injuries*. The latter states it thus: "If it appears that the master has promised to remedy

the defect, or other like inducement to remain has been held out to the servant, the mere fact of his continuing in the employment, does not of itself, as matter of law, exonerate the master from liability; but the question of contributory negligence will, in such a case, be for the jury."

In *Hough* v. *Texas & Pacific R. R.*, 100 U. S. 213, the Court quoted with approval the following passage from *Shearman and Redfield on Negligence* : "There can be no doubt that where a master has expressly promised to repair a defect, the servant can recover for. an injury caused thereby, within such a period of time after the promise as it would be reasonable to allow for its performance, and as we think for an injury suffered within any period which would not preclude all reasonable expectation that the. promise would not be kept." The same authors say in sec. 215 of the 4th ed: "If a servant gives notice to his master of a defect in machinery or appliances which he is required to use, and the master promises to remedy the defect within a reasonable time, the master will be liable for injuries resulting to the servant from such defect, and the servant will not be chargeable with contributory negligence in continuing in the service for such reasonable time, unless the danger is so great that a man of ordinary prudence would not remain in the service under the circumstances." For a list of text-writers and cases sustaining that statement of the law, see note to *Gulf R. W.* v. *Brentford* in 23 *Amer. St. Rep.* 385, and for the general principles involved see an exhaustive and discriminating note to *Illinois Steel Co.* v. *Mann*, 40 L. R. A. 781. In *Conroy* v. *Vulcan Iron Works*, 6 Mo. App. 105, the Court said: "It would be simply inhuman to hold that if an employee, thinking the machinery he is using is to some degree unsafe, reports its condition to his employer and is then told to continue to use it a short time, and that it will be immediately repaired, and then in obedience to instructions continues his work cautiously, believing that he can by care avoid an accident until the evil is remedied, and is injured in spite of all these precautions, his master is not guilty of negligence, but

that the servant is, and that therefore there can be no recovery.    Such a rule would be as bad for the master as it is for the servant.    It certainly is not the law."

In *Kroy* v. *Chicago R. W.*, 32 Iowa, 357, the Court, speaking of what may be regarded as sufficient notice of a defect within the rule above, says, "The dependent position of servants generally makes it reasonable to hold any notice on their part sufficient, however timid or hesitating, so long as it plainly conveys to the master the idea that a defect exists, and that they desire its removal."    This we think is a sound and humane rule.    None of the prayers rejected in this case require us to pass upon some of the distinctions adverted to in the cases cited in 40 L. R. A. *supra*, and there is no occasion to allude to them.    We are content to rest our ruling upon the principles and cases referred to, confining our decision to the facts of this case; and so doing we find no error in the rejection of defendant's second and fourth prayers.

The third exception was taken to a question allowed to Mrs. Von Payhr, a sister-in-law of plaintiff, who was offered in rebuttal by plaintiff to corroborate his testimony that he asked Powell for a new belt, in reply to which question she testified that a few days before the accident, he asked her to bring his supper to him, at the works—and when she refused saying the place was too dirty, he said he would have it cleaned up, and that he had asked Powell for a new belt that day and he said he would give him one.    It has been held in *McAleer* v. *Horsey*, 35 Md. 439, and in *Staylor* v. *Gill*, 93 Md. 453, that where two persons contradict each under oath respecting a matter occurring between themselves only and about which they have equal means of knowledge and equal reason for accurate recollection "evidence may be admitted in corroboration of the witness' testimony to show that he affirmed the same thing before, and that he is still constant to himself."    But the Act of 1888, ch. 315, now incorporated in sec. 3 of Art. 35 of the Code of 1904, it is enacted that "it shall not be competent, in any case, for any *party to the cause* who has been examined therein as a witness, to corroborate his testimony when im-

peached by proof of his own declaration or statement made to third persons out of the presence and hearing of the adverse party."

In the face of this Act we are constrained to hold that this testimony was improperly admitted and tended to prejudice the defendant.

For this error the judgment must be reversed.

> *Judgment reversed with costs to the appellant above and below and new trial awarded.*

(Decided June 23rd, 1905.)